IOWA MUTUAL INSURANCE COMPANY, A CORPORATION, PLAINTIFF V. FRED M. SIMMONS, INC., NORMAN L. HARRIS AND HERBERT H. HARRIS, TRADING AND DOING BUSINESS AS NORMAN HARRIS AND SON, DEFENDANTS.

(Filed 4 November, 1964.)

**1. Insurance § 96—**

The policy obligated insurer to pay all sums for which insured should become legally liable because of the destruction of property by accident, and provided that insurer should defend actions against insured within the coverage. *Held:* After recovery of judgment against insured in an action in which insurer participated, insurer, in insured's action against it, cannot relitigate the question of whether the damage resulted from an "accident".

**2. Insurance § 95—**

A policy providing that insurer should pay to insured all sums which insured becomes legally obligated because of damage to property of third persons caused by accident protects not merely against damage to property by accident but against liability for damage caused by accident, which includes damage resulting from negligence.

**3. Same—**

Insurer issued the policy obligating it to pay insured such sums as insured should become legally obligated to pay as damages resulting from the destruction of property by accident. Insured, in the course of reroofing a building for a third person in the usual and normal manner, put a covering across the unfinished portion of the roof, but water seeped in and damaged the building after ordinary rains. The building owner obtained judgment against insured for the damages to his building on the ground of insured's negligence in the performance of the contract. *Held:* Insurer is liable to insured under the terms of the policy.

**4. Negligence § 1—**

A person whose failure to use due care in the performance of a contract results in damage is liable for the damages thus inflicted as a result of such negligence.

APPEAL by defendant, Norman L. Harris, trading and doing business as Norman Harris and Son, from *Froneberger, J.,* October 1963 Regular Civil Term of CLEVELAND.

Plaintiff instituted this action for a declaratory judgment to determine its liability under a policy of insurance issued to Norman L. Harris, d/b/a Norman Harris and Son.

In July 1962, judgment was rendered declaring plaintiff did not insure Harris against the liability imposed by a judgment obtained by Simmons against Harris. The judgment obtained by plaintiff in 1962 was based on the pleadings and the court's interpretation of the policy provisions. Harris, the insured, appealed. The judgment was reversed. See *Insurance Co. v. Simmons, Inc.,* 258 N.C. 69, 128 S.E. 2d 19.

When the case was tried, as directed in the opinion on the first appeal, the parties waived trial by jury. The court made factual findings which, so far as deemed pertinent, are summarized in the opinion. Based on its findings, the court concluded the policy did not protect Harris. Judgment was entered accordingly. Harris excepted and appealed.

*L. Lyndon Hobbs for defendant appellant.*
*Hamrick & Jones and Falls, Falls & Hamrick for plaintiff appellee.*

RODMAN, J.  Appellants have not properly challenged any of the findings of fact. The question for decision then is: Do the facts found suffice to support the judgment?

The policy issued by plaintiff is designated: "Comprehensive General and Automobile Liability Policy." It insures defendant Harris, an insulation contractor, for a term of one year from July 1, 1960. The "insuring agreements," stated in the policy, read:

> "COVERAGE A — BODILY INJURY LIABILITY
>
> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.
>
> "COVERAGE B — PROPERTY DAMAGE LIABILITY — AUTOMOBILE
>
> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile.
>
> "COVERAGE C — PROPERTY DAMAGE LIABILITY — EXCEPT AUTOMOBILE
>
> "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Plaintiff's liability under Coverage A is limited to $10,000 for each person injured. The maximum liability under that coverage is $40,000.

Liability under Coverage B is limited to $5,000 for each accident. The policy lists eleven motor vehicles owned by the insured.

Liability under Coverage C is limited to $5,000 for each accident, and to $25,000 for "aggregate operations."

The court found these facts: In the course of its business, insured contracted with defendant Simmons to put a new roof on its building. The area to be covered was small, 20 feet by 60 feet. "Work was started on the roof on September 27, 1960, by the defendant, Harris, and his employees. After a part of the roof had been removed and before it had been replaced with the new roof, and on the afternoon of September 27, 1960, an afternoon shower of rain fell in Shelby, North Carolina, and there was a morning shower of rain in Shelby, North

Carolina, on September 28, 1960. The rains which fell in Shelby, North Carolina, on September 27th and 28th, 1960, were ordinary and usual showers of rain in every respect. The defendant, Fred M. Simmons, Inc., contended that water from these rains leaked through the roof into the building and damaged the tangible and intangible property in the building, and sued the defendant, Harris, in the Superior Court of Cleveland County for the purpose of recovering the sum of $10,256.25, which the said Fred M. Simmons, Inc. alleged to be due by reason of the fact that the defendant, Harris, after removing the roof on the building belonging to Fred M. Simmons, Inc., negligently failed to cover the exposed portion of the roof, thereby permitting the rain water which fell on September 27th and 28th, 1960, to come through the partially exposed roof, causing water damage in the amount sued for. This case was tried out to its conclusion, and a verdict was rendered in favor of Fred M. Simmons, Inc. against the defendant, Norman L. Harris, trading and doing business as Norman Harris and Son, in the amount of $1,900.00, plus cost."

No appeal was taken from the judgment holding Harris liable to Simmons because of Harris' negligent failure to cover the exposed portion of the roof. Harris was represented in that litigation by an attorney provided by plaintiff under a non-waiver agreement. Harris, in his answer in the action brought by Simmons, admitted the rains causing the damage were ordinary and usual showers of rain.

Harris assigned three experienced roofers and two helpers to do the work on the Simmons building. Before it started raining, Harris sent polyethylene film to cover the Simmons roof to prevent water entering the building. The roof was covered with this material, which was held in place by concrete blocks. Harris and his men inspected the covering. They discovered no leaks.

"All of the evidence in this case shows that the polyethylene covering was put on the roof in the usual and normal manner in order to keep out the water; that it was weighted down with concrete blocks; that there were no holes or breaks in it; that it was at all times in place; that at no time was there any accident caused by a block falling or any rip or tear in the polyethylene fabric, but that at all times said fabric and the blocks were intact and in good condition."

Based on its findings, the court concluded: "[T]he policy of liability insurance issued by plaintiff * * * did not cover the loss sustained which Fred M. Simmons, Inc. suffered by rain coming into its building while it was being re-roofed."

The conclusion which the court reached is not, in our opinion, supported by the findings, but is based on a misapprehension of the protection which plaintiff, for the premiums paid, promised to provide.

The policy does not purport to protect the insured against injury or damage to property "caused by accident." The protection accorded is against liability for injury to person, or damage to property "caused by accident." Not until insured has been adjudged legally liable can he call on insurer to pay for injury to person, or damage to property.

To prevent an adjudication of liability, insured agreed to defend "any suit against insured alleging such injury * * * or destruction and seeking damages on account thereof." Not only did insurer have the duty of defending suits asserting liability, it had the right to investigate and settle asserted liability.

When insured's legal liability for damages resulting from his negligence and the amount thereof has been judicially determined in a suit defended by insurer under the terms of its policy, insurer cannot, when called upon to discharge insured's liability, relitigate the questions answered in the suit against insured. *Caterpillar Tr. Co. v. International Harvester Co.,* 120 F. 2d 82, 139 A.L.R. 1 and cases cited in annotations pp. 12-17; *Sheehan v. Goriansky,* 321 Mass. 200, 72 N.E. 2d 538, 173 A.L.R. 497; *Maryland Casualty Co. v. Sturgis,* 129 S.W. 2d 599, 123 A.L.R. 704, at 709; *B. Roth Tool Co. v. New Amsterdam Casualty Co.,* 161 F. 709; 30A AM. JUR., Judgments, Sec. 401, p. 456, note 2. Here the court's fifth finding establishes the fact that insured was adjudged liable to Simmons because of the negligent manner in which insured performed his contract. The findings by the court that Harris employed experienced roofers, that he sent materials to the building to protect against the expected showers, and that Harris had testified in the suit against him that he had acted diligently to protect Simmons' property are of no moment in determining plaintiff's liability. Insured's liability to Simmons based on negligence in performing the contract can not be relitigated.

One who, because of his failure to use due care, does damage to the property of another is liable for his negligent act. This is true whether the injuries result from failure to exercise care in the manner in which work contracted for is done, or in the enjoyment of pleasurable pursuits. *Peele v. Hartsell,* 258 N.C. 680, 129 S.E. 2d 97; *Pinnix v. Toomey,* 242 N.C. 358, 87 S.E. 2d 893; *Hodges v. Carter,* 239 N.C. 517, 80 S.E. 2d 144, 45 A.L.R. 2d 1; 38 AM. JUR. 662.

It having been established by the court's findings that liability was imposed because of insured's failure to exercise due care to protect

against an event which he could reasonably foresee, is plaintiff, insurer, under no obligation because the damage was not "caused by accident?"

The policy has three insuring agreements identical in form so far as the question now under consideration is concerned. Coverage A is limited to liability resulting from personal injuries inflicted. Coverage B is limited to liability for damages to property arising out of the use of an automobile. Coverage C is in the exact language of Coverage B, except Coverage C contains no limitation with respect to the instrumentality which causes the damage. To limit the word accident to "an unforseen event occurring without will or design of the person whose mere act causes it" would for all practical purposes render the policy valueless so far as the quoted coverages are concerned. To impose legal liability for injury to person or damage to property, the one causing the damage must have been able to reasonably forsee an injurious effect from the manner in which he acted. *Stephens v. Oil Co.*, 259 N.C. 456, 131 S.E. 2d 39; *Schloss v. Hallman*, 255 N.C. 686, 122 S.E. 2d 513; *Smith v. Pate*, 246 N.C. 63, 97 S.E. 2d 457; and cases collected in note 53, 3 Strong's N. C. Index, p. 449.

To interpret the policy provision, it is important to look at the title plaintiff gave to the document it issued. Its title is "Comprehensive General and Automobile Liability Policy." The Legislatures of 1953 and 1955 required operators of motor vehicles in this State to be "financially responsible." Proof of financial responsibility is defined in G.S. 20-279.1 as: "Proof of ability to respond in damages for *liability,* on account of accidents occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance or use of a motor vehicle, in the amount of $5,000 because of bodily injury to or death of one person in any one *accident,* and, subject to said limit for one person, in the amount of $10,000 because of bodily injury to or death of two or more persons in any one *accident,* and in the amount of $5,-000 because of injury to or destruction of property of others in any one *accident.*" The insuring provisions are in the language of our statute with respect to proof of financial responsibility, except that Coverages A and C are not limited to injuries or damages resulting from the use of an automobile. It would be strange indeed to hold that insured was protected against liability arising under Coverage B because of damage to property from the negligent use of an automobile, but that he was not protected under Coverage A against liability for personal injuries resulting from the same negligence.

We are of the opinion, and hold, that the policy afforded the insured protection against legal liability for injury to person or property resulting from insured's negligent failure to exercise due care. *Rex Roofing*

*Co., Inc. v. Lumber Mut. Cas. Ins. Co.,* 116 N.Y.S. 2d 876; *Employers Ins. Co. of Ala. v. Alabama Roofing & Sid. Co.,* 124 So. 2d 261; *Cross v. Zurich General Accident & Liability Ins. Co.,* 184 F. 2d 609; *Corbetta Const. Co. v. Michigan Mutual Liability Co.,* 247 N.Y.S. 2d 288 at 293; *Cross Properties, Inc. v. Home Indemnity Company,* 246 N.Y.S. 2d 683 at 685; *Wolk v. Royal Indemnity Company,* 210 N.Y.S. 2d 677; *Messersmith v. American Fidelity Co.,* 232 N.Y. 161, 133 N.E. 432, 19 A.L.R. 876. The conclusion here reached conforms with the conclusion reached in the prior opinion. Plaintiff did not allege in its amended complaint, on which the first judgment was rendered, that Simmons' judgment against Harris was based on the negligent manner in which Harris performed his contract. That fact now affirmatively appears in the court's findings of fact.

Because of the court's misinterpretation of the policy provisions, there must be a

New trial.