UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THE TRAVELERS INDEMNITY COMPANY,
*Plaintiff-Appellee,*

v.

MILLER BUILDING CORPORATION;
PVC, INCORPORATED,
*Defendants-Appellants.*

No. 03-1510

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
Terrence W. Boyle, Chief District Judge.
(CA-02-41)

Argued: January 22, 2004

Decided: May 20, 2004

Before WILKINSON, LUTTIG, and TRAXLER, Circuit Judges.

_____

Vacated and remanded by unpublished opinion. Judge Traxler wrote the opinion, in which Judge Luttig joined. Judge Wilkinson wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** Daniel K. Bryson, LEWIS & ROBERTS, Raleigh, North Carolina, for Appellants. Lee Hedgecock Ogburn, KRAMON & GRAHAM, Baltimore, Maryland, for Appellee. **ON BRIEF:** Sandra W. Mitterling, LEWIS & ROBERTS, Raleigh, North Carolina, for Appellants. Geoffrey H. Genth, Steven M. Klepper, KRAMON & GRAHAM, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

TRAXLER, Circuit Judge:

Travelers Indemnity Company issued a comprehensive general liability insurance policy to Miller Building Corporation. Travelers brought this action seeking a declaration that it had no duty to defend Miller in an arbitration proceeding involving Miller and PVC, Inc. The district court granted summary judgment in favor of Travelers, concluding that there was no coverage under the policy and that Travelers therefore had no duty to defend. Miller appeals. We conclude that under North Carolina law,[1] Travelers owes Miller a duty to defend against PVC's claims. We therefore vacate the district court's order and remand for further proceedings.

### I.

The relevant facts can be stated briefly. PVC hired Miller to build a hotel in Wrightsville Beach, North Carolina. When the hotel opened, certain problems became apparent. The problems included an improperly installed post-tensioning cable system, which led to extensive cracking and buckling of the hotel's concrete framework; an improperly applied exterior wall finish, which allowed water to leak into the hotel, damaging walls and carpet in the guest rooms; and improperly installed windows and sliding glass doors, which also allowed water to leak into the guest rooms. Once the problems appeared, PVC declined to pay Miller the balance due under the construction contract, and Miller initiated arbitration proceedings against PVC. PVC asserted counterclaims, seeking to hold Miller responsible for the costs of repairing the construction defects themselves as well as other damage caused by the defects.

---

[1] A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). The parties agree that North Carolina law governs this dispute.

Acting under a reservation of rights, Travelers funded Miller's defense in the underlying arbitration action.[2] Travelers thereafter commenced this action seeking a declaration that it was not obligated under the policy to defend Miller against the claims asserted by PVC.

## II.

Under North Carolina law,

> [a]n insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable.

*Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986). We are not, however, strictly limited to the allegations contained in the pleadings; the facts as developed during discovery are also relevant to the duty-to-defend inquiry. *See Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 386 S.E.2d 762, 764 (N.C. Ct. App. 1990) ("Although the insurer's duty to defend an action is generally determined by the pleadings, facts learned from the insured and facts discoverable by reasonable investigation may also be considered. Therefore, the affidavits filed by plaintiff in this case are relevant to the determination of defendant's duty to defend." (citation omitted)).

"[T]he insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy." *Waste Mgmt.*, 340 S.E.2d at 377. "[A]llegations of facts that describe a hybrid of covered and excluded events or *pleadings that disclose a mere possibility that the insured is liable* (and that the potential liability is covered) suffice to impose a duty to defend" upon the insurer. *Id.* at 377 n.2 (emphasis added). "Any doubt as to coverage is to be resolved in favor of the insured." *Id.* at 378; *accord Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Associated Scaffolders & Equip. Co.*, 579 S.E.2d 404, 407 (N.C. Ct. App. 2003).

---

[2]At least as of the time that the briefs were filed, the arbitration proceedings were on-going.

The policy issued by Travelers states that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage,'" so long as the "'property damage' is caused by an 'occurrence.'" J.A. 74. At issue in this appeal is whether PVC seeks recovery for "property damages" within the meaning of the policy, and, if so, whether those damages were caused by an "occurrence" as defined by the policy.

A.

The policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . [and] [l]oss of use of tangible property that is not physically injured." J.A. 87. The district court concluded that to fall within the scope of a general liability policy, "'the property allegedly damaged has to have been undamaged or uninjured at some previous point in time.'" J.A. 1223 (quoting *Wm. C. Vick Constr. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 582 (E.D.N.C. 1999), *aff'd*, No. 99-1577, 2000 WL 504197 (4th Cir. April 28, 2000) (unpublished)). The district court determined that the hotel had never been in an undamaged condition and that PVC's claims thus did not fall within the scope of the policy: "The post-tensioning cable system was never properly tensioned[,] the exterior wall finish was never properly applied, and the doors and windows were never in proper working order. Therefore, the Underlying Claims do not constitute claims for property damage, rather, they are claims for defective construction." J.A. 1224.

Under North Carolina law, liability insurance is not a substitute for a performance bond. *See, e.g.*, *Western World Ins. Co. v. Carrington*, 369 S.E.2d 128, 130 (N.C. Ct. App. 1988) ("Since the quality of the insured's work is a 'business risk' which is solely within his own control, liability insurance generally does not provide coverage for claims arising out of the failure of the insured's product or work to meet the quality or specifications for which the insured may be liable as a matter of contract. . . . [L]iability insurance policies are not intended to be performance bonds."). Thus, to the extent that PVC is seeking to recover from Miller the cost of correcting Miller's faulty workmanship, the claims do not fall within the scope of the policy issued by Travelers, because faulty workmanship does not constitute "property

damage." *See Hobson Constr. Co. v. Great Am. Ins. Co.*, 322 S.E.2d 632, 635 (N.C. Ct. App. 1984). We agree with Miller, however, that PVC's claims are not limited to correction of the construction defects.

In addition to the claims seeking to repair Miller's faulty workmanship, PVC's counterclaim alleges that carpet in certain guest rooms was damaged by water leaking through the improperly installed windows and sliding glass doors. Even if the district court properly treated the improper installation of the cable system, doors and windows as construction defects, this aspect of PVC's counterclaim alleges that a particular construction defect (improper installation of windows and doors) caused damage to separate tangible property (guest-room carpet). This claim, therefore, clearly falls within the policy's definition of "property damage."

Travelers, however, seems to contend that the guest-room carpet is simply a component of Miller's work, which was the construction of the hotel. Travelers contends that because the hotel was never in a non-defective condition, it is irrelevant that "the damage may have migrated from one component of the insured's work to another." Brief of Respondent at 32. Under Travelers' analysis, then, the later-occurring water damage to the guest room carpet does not amount to property damage under the policy because the guest-room carpet is an undifferentiated component of the defective-from-the-beginning hotel.

While this argument might have some force under other circumstances or as to another component of the hotel, we find it unavailing here. The record establishes that the guest-room carpet was "an owner furnished material," J.A. 573, which indicates that the carpet was delivered undamaged to PVC and that PVC then provided the undamaged carpet to Miller for installation. Given these facts and the nature of our inquiry when resolving the duty-to-defend issue, we believe that we must view the guest-room carpet as separate from the hotel, not an undifferentiated component of the hotel, and the damage to that carpet as a discrete form of property damage.

Therefore, giving Miller the benefit of any doubt or ambiguity that arises from PVC's claims, we conclude that, at the very least, PVC's claims with regard to damage to the guest-room carpet sufficiently

alleges the existence of property damage within the meaning of the policy.[3] If this property damage was caused by an occurrence as defined by the policy, then Travelers' duty to defend is triggered, even if none of the remaining claims asserted by PVC fall within the reach of the policy. *See Bruce-Terminix Co. v. Zurich Ins. Co.*, 504 S.E.2d 574, 578 (N.C. Ct. App. 1998) ("When pleadings allege multiple claims, some of which may be covered by the insurer and some of which may not, the mere possibility the insured is liable, and that the potential liability is covered, may suffice to impose a duty to defend.").

## B.

The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." J.A. 86. The policy, however, does not define "accident." In the insurance context, North Carolina defines an accident as "an unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty." *Waste Mgmt.*, 340 S.E.2d at 379.

Travelers contends that the district court properly concluded that none of PVC's claims were caused by an accident because PVC's claims all involve the foreseeable consequences of Miller's allegedly shoddy workmanship.[4] We disagree.

---

[3]This conclusion makes it unnecessary to consider Miller's argument that PVC's claims constitute "property damage" under the policy's "loss of use" clause and Travelers' related argument that certain policy exclusions bar all loss-of-use claims.

[4]In support of this position, Travelers relies heavily on an unpublished opinion from this court. As our Local Rules make clear, reliance upon unpublished opinions is disfavored, and this court will cite unpublished opinions only in "unusual circumstances." 4th Cir. Loc. R. 36(c). We find no such unusual circumstances in this case. As noted previously, this case falls within our diversity jurisdiction, and we are required by North Carolina's choice-of-law rules to apply North Carolina law as declared by North Carolina courts. North Carolina has a well-developed body of law applicable to the duty-to-defend question with which we are confronted, thus making it unnecessary to resolve the question by reference to our own unpublished opinions.

Water damage to carpet is certainly a foreseeable consequence of an improperly installed door or window, at least as the term "foreseeable" is used in the tort context. But under North Carolina law, foreseeability in the context of an insurance dispute does not carry the same meaning as it does in the context of a negligence claim.

In North Carolina, as elsewhere, a defendant may be held liable in tort for the foreseeable consequences of his actions. *See, e.g.*, *Azzolino v. Dingfelder*, 337 S.E.2d 528, 534 (N.C. 1985) ("Under traditional theories of tort law, defendants are liable for all of the reasonably foreseeable results of their negligent acts or omissions."). But as the North Carolina Supreme Court made clear in *Iowa Mutual Insurance Co. v. Fred M. Simmons, Inc.*, 128 S.E.2d 19 (N.C. 1962) ("*Iowa Mutual I*"), the fact that the consequences of an action are foreseeable for purposes of a negligence claim does not mean that the consequences are not accidental for purposes of determining coverage under a general liability insurance policy.

In *Iowa Mutual I*, the insured, a roofing contractor, began a roofing job that required the removal of the old roof. The contractor removed the old roof and covered the exposed roofing with a tarp weighted down by cinder blocks. Before the new roof was installed, it rained, and water leaked into the building, causing damage. *See id.* at 20-21. The insurer brought a declaratory judgment action seeking a declaration that it was not obligated to defend the contractor against the claims of the building owner. The insurer argued that its policy covered damage "caused by accident," and that because it was foreseeable that rain could get in under the tarp, the damage was not caused by an accident. The North Carolina Supreme Court rejected this argument:

> [W]e do not subscribe to the view that the term "accident," used in the liability policy here, considered in its usual, ordinary, and popular sense necessarily excludes human fault called negligence, because negligence would most probably be the predicate of any likely liability against appellant. To adopt the narrow view that the term "accident" in liability policies of insurance, as in the policy here, necessarily excludes negligence would mean that in most, if not all,

cases the insurer would be free of coverage and the policy would be rendered meaningless.

*Id.* at 25; *see also Iowa Mut. Ins. Co. v. Fred M. Simmons, Inc.*, 138 S.E.2d 512, 515 (N.C. 1964) ("*Iowa Mutual II*") ("We are of the opinion . . . that the policy afforded the insured protection against legal liability for injury to person or property resulting from insured's negligent failure to exercise due care.") (opinion after remand from *Iowa Mutual I*).

More recent cases from North Carolina confirm that foreseeability in the tort sense does not preclude coverage under a liability insurance policy. As the North Carolina Court of Appeals has explained,

[T]he question we must answer on examining the complaints is whether the facts alleged suggest a potential that an accident occurred and do not suggest conclusively that the insured actually foresaw or intended that its activity would result in bodily injury or property damage. We stress that *our examination of intent or expectation should be a subjective one, from the standpoint of the insured, and not an objective one asking whether the insured 'should have' expected the resulting damage*.

*Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 323 S.E.2d 726, 731 (N.C. Ct. App. 1984) (emphasis added), *rev'd in part on other grounds*, 340 S.E.2d 374 (N.C. 1986); *accord Washington Hous. Auth. v. North Carolina Hous. Auth. Risk Retention Pool*, 502 S.E.2d 626, 630 (N.C. Ct. App. 1998).

Travelers' view of what constitutes an occurrence is precisely the one rejected by the *Iowa Mutual* court, and acceptance of Travelers' view would, as the court noted in *Iowa Mutual I*, render the policy virtually meaningless. As mentioned above, liability for negligence is premised upon the foreseeability of injury. If the injury is reasonably foreseeable, there is liability; if the injury is not reasonably foreseeable, there is no liability. Travelers contends that a liability insurance policy provides no coverage for the foreseeable consequences of an insured's actions. Under Travelers' interpretation, then, liability insurance policies provide coverage only for unforeseeable consequences

—that is, only in those situations where the law would *not* impose liability and where there would be no need for insurance coverage. *See Iowa Mutual II*, 138 S.E.2d at 515 ("To limit the word accident to 'an unforseen event occurring without will or design of the person whose mere act causes it' would for all practical purposes render the policy valueless so far as the quoted coverages are concerned. To impose legal liability for injury to person or damage to property, the one causing the damage must have been able to reasonably foresee an injurious effect from the manner in which he acted."). An interpretation of a liability insurance policy that renders the policy meaningless simply cannot be the proper interpretation. *Cf. Great Am. Ins. Co. v. C.G. Tate Const. Co.*, 279 S.E.2d 769, 771 (N.C. 1981) (explaining that insurance contract provisions should be construed in accord with their purposes and with the reasonable expectations of the parties).

Applying the proper subjective standard, we conclude that PVC's claim of damage to guest-room carpet caused by Miller's improper installation of windows and sliding glass doors falls within the scope of the policy issued by Travelers. While it is certainly foreseeable (in the tort sense) that defective windows and sliding glass doors could lead to water intrusion and water damage, there is nothing in the record indicating that Miller subjectively intended to cause damage to the guest rooms. Thus, PVC's claim that Miller's allegedly shoddy workmanship caused damage to the guest-room carpets sufficiently alleges an "occurrence" within the meaning of the policy, notwithstanding the fact that damage to the carpet was a foreseeable consequence of the improper installation of guest-room windows and sliding glass doors.

### III.

Because at least some of the claims asserted by PVC against Miller seek recovery for "property damage" caused by an "occurrence" as those terms are used in the policy, Travelers has a duty to defend Miller against PVC's claims. Accordingly, we vacate the district court's order granting summary judgment to Travelers and remand for any further proceedings that might be warranted.[5]

---

[5]Our conclusion that summary judgment was improperly granted renders moot Miller's claim that the district court should have permitted further discovery.

*VACATED AND REMANDED*

WILKINSON, Circuit Judge, dissenting:

I respectfully dissent. The district court properly found that the defective construction meant the hotel was never in an undamaged state and thus did not suffer "property damage" under the terms of the Policy.* North Carolina law clearly resolves what constitutes property damage under the Policy. *See Wm. C. Vick Constr. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 52 F. Supp. 2d 569, 580-83 (E.D.N.C. 1999), *aff'd* 213 F.3d 634 (4th Cir. 2000); *Hobson Constr. Co. v. Great Am. Ins. Co.*, 322 S.E.2d 632, 635 (N.C. App. 1984). Since Miller has failed to show that property damage has occurred under the terms of the Policy, the district court properly granted summary judgment to Travelers.

I.

The Policy provides that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence.'" The Policy defines property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property; or . . . [l]oss of use of tangible property that is not physically injured."

To be considered property damage under North Carolina law, "the property allegedly damaged has to have been undamaged or uninjured at some previous point in time." *Vick*, 52 F. Supp. 2d at 582. Damages based solely on faulty workmanship do not constitute property damage under a standard comprehensive general liability policy. *Hobson Constr. Co.*, 322 S.E.2d at 635.

Interpreting the facts in the light most favorable to Miller, the district court properly found that the extensive damage caused by defective construction meant the hotel as a whole was never in an

---

*The district court also found that no occurrence had taken place under the terms of the Policy. Since the absence of property damage resolves this case, I need not address this other ground for granting summary judgment.

undamaged condition. This defective workmanship included the improper installation of the post-tensioning cable system that caused the hotel's concrete framework to crack and buckle, and the improper application of the exterior wall finish and the improper installation of doors and windows that led to extensive water damage.

The majority contends that the guest-room carpeting was undamaged at the time it was installed and therefore holds that the subsequent water damage to the carpeting constitutes covered property damage under the Policy. The problem with that view is that the water damage to the carpeting was a direct consequence of the improperly applied exterior wall finish and improperly installed doors and windows. This damage is substantively an extension of the defective workmanship. Admittedly, Miller neither built the windows and doors nor wove the carpet. But this fact does not matter. Defective workmanship during the installation of these items caused the windows, doors, and carpet to suffer significant damage during inclement weather well before the hotel was completed. The majority seeks to create an expansive understanding of property damage by attempting to parse defective workmanship from its direct consequences. But the damage here is ultimately part and parcel of the defective workmanship. The hotel was in an unusable, damaged state from its inception because of the defective workmanship, and therefore none of the damages are covered as property damage under the Policy.

## II.

Faulty workmanship and "property damage" are quite different things. Finding that "property damage" has occurred here effectively transforms a commercial general liability insurance policy into a performance bond. Neither party contracted into such an arrangement, and Miller Building Corporation may now receive a windfall for a very poor job of construction. Even if Travelers had agreed to assume such a sweeping risk, Miller Building Corporation would have had to pay a substantially higher premium to enjoy this protection. By the plain language of this Policy the parties anticipated coverage to extend only to initially undamaged property. Appellants' interpretation leaves language an unpredictable guide to coverage and liability. Unsettling commercial expectations created through clear contractual language is the bane of any system of insurance.