**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-2235

THE TRAVELERS INDEMNITY COMPANY,

Plaintiff - Appellee,

versus

MILLER BUILDING CORPORATION; PVC,
INCORPORATED,

Defendants - Appellants.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington. Terrence W. Boyle,
District Judge. (CA-02-41)

Argued: February 2, 2007               Decided: March 7, 2007

Before WILKINSON, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Daniel K. Bryson, LEWIS & ROBERTS, P.L.L.C., Raleigh, North
Carolina, for Appellants. Lee Hedgecock Ogburn, KRAMON & GRAHAM,
Baltimore, Maryland, for Appellee. **ON BRIEF:** Geoffrey S. Proud,
LEWIS & ROBERTS, P.L.L.C., Raleigh, North Carolina, for Appellants.
Steven M. Klepper, KRAMON & GRAHAM, Baltimore, Maryland, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This declaratory judgment action centers around the construction of a hotel and the insurance coverage that existed for losses caused by defects in the building. The district court determined the extent of coverage under the insurance policy prior to completion of arbitration proceedings between the builder and the owner of the hotel. We affirm.

I.

Miller Building Corporation ("Miller") was hired by PVC, Inc. to build a hotel at Wrightsville Beach, North Carolina. Upon completion of the work, PVC asserted that numerous deficiencies existed and stopped payments to Miller. In September 2000, Miller initiated arbitration proceedings against PVC, and PVC responded with counterclaims for construction defects against Miller. Because Travelers Indemnity Company ("Travelers") had issued a commercial general liability policy to Miller for the time period at issue, Travelers became involved in the controversy and filed the present declaratory judgment action.

Initially, Travelers denied it had any duty to defend Miller because of the nature of the claims being made by PVC. We ultimately resolved this issue in favor of Miller, recognizing the breadth of an insurer's responsibility to defend its insured and the existence of at least one claim for which coverage could exist.

2

See <u>Travelers Indem. Co. v. Miller Bldg. Corp.</u>, 97 F.App'x 431 (4th Cir. 2004).

Upon return to the district court after our ruling, Travelers filed for summary judgment, seeking a decision that any coverage Travelers might have was limited "to physical injury to tangible property separate from the hotel and that was delivered to Miller in an undamaged state." J.A. 38. Miller opposed summary judgment and urged the district court to stay the court proceedings until the pending arbitration could be completed.

The district court found no reason for delay and issued its order. The district court determined that:

> Travelers' coverage extends to damage to property separate from the hotel that was not subjectively foreseeable to Miller Building. Travelers' coverage includes consequential damages for the loss of use of property separate from the hotel, unless Miller building failed to perform its construction contract with PVC according to its terms. Travelers' coverage does not include consequential damages from the delay in opening the hotel.

J.A. 82. From this decision the present appeal followed.

## II.

The Declaratory Judgment Act provides that in a case within the district court's jurisdiction, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a) (West 2006). The Declaratory

3

Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (internal quotation marks omitted). "[A] declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (internal quotation marks omitted). We have long recognized the discretion afforded to district courts in determining whether to grant declaratory relief. Thus we review the district court's decision for an abuse of discretion. See Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004).

Miller argues first that the district court should not have defined the scope of the insurance coverage until the cause and extent of PVC's damage had been fleshed out and determined in the arbitration proceedings. Under the circumstances of the case, we find no error in the decision of the district court to resolve the coverage issue presented in this declaratory judgment action.

As a general practice, courts wait to decide coverage until litigation or agreement has determined the particular damage for which an insured will be responsible. See e.g., Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 340 S.E.2d 374, 377 (N.C.

4

1986) ("An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial."); Wayne Bros., Inc. v. North River Ins. Co., 2003 WL 22213615 (M.D.N.C. 2003) (concluding that the circumstances were not ripe for a declaration of the scope of indemnification because issues involving causation were still outstanding). When the separate proceeding has defined the damages, the parties resort to the insurance policy to see whether all or part of that damage is covered by insurance. Waiting to decide the scope of indemnification is not, however, a hard and fast rule, and there may indeed be circumstances where the issues in the case and the development of the case, along with interests in judicial economy, present a situation where the court can materially advance the litigation by deciding the legal outlines of coverage prior to the completion of litigation over particular items of damage.

Here, the parties had already been to this court once on the question of whether Travelers' policy covered any of the damages alleged in PVC's complaint. Our opinion acknowledged that North Carolina law would severely limit the types of damage for which the insured would be indemnified, but we identified a narrow claim for which coverage might exist and found it sufficient to trigger a duty to defend. See Travelers, 97 F.App'x at 434-35. While we did not technically decide anything beyond the duty to defend question,

we implicitly recognized that a vast majority of the alleged damages would not be covered by the policy.

After our ruling, the North Carolina Court of Appeals further clarified the coverage question through its decision in <u>Production Systems Inc. v. Amerisure Insurance Co.</u>, 605 S.E.2d 663 (N.C. Ct. App. 2004). This ruling, discussed <u>infra</u>, provided further guidance to the parties and the district court as to what the coverage limitations were in similar circumstances for the type of damages here alleged. Consequently, at the time the district court made its ruling, the law controlling the insurance dispute between Miller and Travelers was fairly well defined.

Additionally, as it arose in this case, the indemnification issue was a narrow, purely legal question, and in light of our prior opinion and the North Carolina Court of Appeals decision in <u>Production Systems</u>, the proper answer to the question raised by Travelers was relatively clear. Because no substantive progress had been made in the arbitration proceedings between Miller and PVC, a prompt ruling on the scope of Travelers' indemnification obligation might also provide some guidance and structure for the arbitration proceedings.

For all of these reasons, we believe the circumstances permitted the district court in the exercise of its discretion to define the limits of coverage through Travelers' motion for summary

judgment even though there had not been a final determination of the exact damages for which Miller might be responsible.

III.

Having decided that the district court properly reached the coverage question, we now consider the issue on its merits.  The district court held that Travelers' policy covered damage to property that was separate from the hotel if the occurrence of the damage was not subjectively foreseeable to Miller.  Miller argues that the district court misinterpreted our prior opinion and erred in relying on it to reach a decision on the total coverage question.  Miller points out that our previous ruling did not define the limits of coverage but only determined whether there was an allegation of potentially covered damage to invoke Travelers' duty to defend.  We believe Miller unduly limits the import of our prior decision.  Because a duty to defend arises only where the allegations of a complaint establish a covered claim, it was necessary for us to determine the scope of coverage provided by Travelers' policy.

The policy issued by Travelers defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . [and] [l]oss of use of tangible property that is not physically injured." Travelers, 97 F.App'x at 433.  The policy limited payment to "those sums that the insured

7

becomes legally obligated to pay as damages because of . . . 'property damage,'" so long as the "'property damage' is caused by an 'occurrence.'" Id. We concluded in our prior opinion that "to the extent that [PVC] is seeking to recover from Miller the cost of correcting Miller's faulty workmanship, the claims do not fall within the scope of the policy issued by Travelers, because faulty workmanship does not constitute 'property damage.'" Id. at 434 (citing Hobson Constr. Co. v. Great Am. Ins. Co., 322 S.E.2d 632, 635 (N.C. Ct. App. 1984)). Thus, the only claims that could fall within the definition of "property damage," as we construed North Carolina law, were those that alleged damages to the owner's own property that was separate from the hotel. Our prior opinion thus provided guidance on the indemnification question, and the district court properly applied the formulation we set out in our opinion.

Moreover, the North Carolina Court of Appeals has since our first opinion adopted the same analysis. See Prod. Sys., 605 S.E.2d 663. The court there examined a situation where a contractor failed to properly install components of a oven feed line system causing damages arising from the cost of repairing the line systems. The court noted that "[t]he term 'property damage' in an insurance policy has been interpreted to mean damage to property that was previously undamaged, and not the expense of repairing property or completing a project that was not done correctly or according to contract in the first instance." Id. at 666. The

8

court further stated that "under the precedent of <u>Hobson</u>, [322 S.E.2d 632,] 'property damage' does not refer to repairs to property necessitated by an insured's failure to properly construct the property to begin with." <u>Id.</u> Thus, the court concluded that "there was no 'property damage' to the oven feed line systems because the only 'damage' was repair of defects in, or caused by, the faulty workmanship in the initial construction." <u>Id.</u> at 667.

The state court's approach in <u>Production Systems</u> mirrors the approach we took in our prior opinion. The district court, therefore, committed no error when issuing the declaratory relief sought by Travelers.

IV.

Accordingly, we affirm the district court's grant of summary judgment. Because we find no error in the district court's decision to grant declaratory relief to Travelers, we conclude the court did not err in denying Miller's motion for a stay.

<u>AFFIRMED</u>