HARTFORD UNDERWRITERS INSURANCE COMPANY, Plaintiff, v. BERRIEN BECKS, JR., Administrator of the Estate of KATHLEEN E. LUCAS and the Estate of JAMES G. LUCAS, SR., and JAMES G. LUCAS, JR., Defendants

No. COA94-1369

(Filed 6 August 1996)

**Insurance § 527 (NCI4th)— fraud by policyholders in procurement of policy—minimum liability coverage absolute—UIM coverage not absolute**

Since the minimum liability coverage of $25,000/$50,000 mandated by the Financial Responsibility Act becomes "absolute" upon the occurrence of injury or damage, the trial court erred in ordering rescission of the automobile policy *in toto* based upon the jury's finding of fraud by the insured decedents; however, because any liability coverage in excess of the statutory minimum was void *ab initio* in consequence of the jury's determination of fraud on the part of the policyholders, no UIM coverage in the policy was required or mandated by N.C.G.S. § 20-279.21(b)(4), the UIM provisions did not become absolute at the time of loss, and the successful defense of fraud insulated plaintiff against defendants' claim to $700,000 UIM coverage.

**Am Jur 2d, Automobile Insurance §§ 35, 37, 449; Insurance § 141.**

**Judgment avoiding indemnity or liability policy for fraud as barring recovery from insurer by or on behalf of third person. 18 ALR2d 891.**

**Fraud, false swearing, or other misconduct of insured as barring recovery on property insurance by innocent coinsured. 24 ALR3d 450.**

Appeal by defendants from judgment entered 9 May 1994 by Judge Dexter Brooks in Wake County Superior Court. Heard in the Court of Appeals 13 September 1995.

*Thompson, Barefoot & Smyth, L.L.P., by Theodore B. Smyth, for plaintiff-appellee.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Stephen D. Coggins, Regina J. Wheeler, and Kiah T. Ford, IV, for defendants-appellants.*

JOHN, Judge.

In this action for declaratory judgment regarding UIM coverage, defendants primarily assign error to the trial court's denial of their motions for directed verdict and judgment notwithstanding the verdict. We find defendants' arguments unpersuasive.

Pertinent facts and procedural information are as follows: On 16 December 1989 in Volusia County, Florida, Kathleen E. Lucas (Mrs. Lucas) and James G. Lucas, Sr. (Mr. Lucas), were fatally injured in an automobile collision while passengers in a 1966 Oldsmobile owned by Mr. Lucas. The vehicle was operated by the Lucas' son, defendant James G. Lucas, Jr., who also suffered severe bodily injuries. At that time, the Oldsmobile was insured under a policy of insurance (the policy) issued by plaintiff Hartford Underwriters Insurance Company and which provided coverage in the amount of $100,000/$300,000. Following exhaustion of the minimum liability coverage on the other vehicle involved in the collision, underinsured motorist (UIM) claims were submitted to plaintiff on behalf of the defendants.

Plaintiff subsequently initiated the instant declaratory judgment action seeking a determination that no UIM coverage was available to defendants under the policy. Plaintiff later amended its complaint to allege a claim for rescission on grounds Mr. and Mrs. Lucas had intentionally misrepresented material facts concerning, *inter alia*, their state of residence, in procuring the policy.

On 24 January 1994, the trial court granted defendants' motion for partial summary judgment on the issues raised in the original complaint and entered an Order decreeing that

in the event that a verdict is entered or a ruling . . . is made . . . [the] policy . . . was in full force and effect as of December 16, 1989, and not subject to rescission on the [fraud] grounds set forth in the Amended Complaint, then this Court rules . . . that: . . . [d]efendants are entitled to elect UIM coverage . . . equal to the liability limits of $100,000 per person, $300,000 per accident; . . . and stacked for each of the three vehicles covered by the Policy to provide $300,000 to each of the estates of James Lucas, Sr. and Kathleen Lucas.

At trial, the sole issue submitted to the jury was as follows:

Did Mr. or Mrs. Lucas, Sr. intentionally and fraudulently make any material misrepresentation to Hartford or conceal a material fact

from Hartford on which Hartford reasonably relied in providing coverage to them?

Following the jury's affirmative response, the trial court entered judgment 9 May 1994 rescinding the policy and also denied defendants' motion for judgment notwithstanding the verdict. Defendants filed timely notice of appeal.

---

The primary issue raised by defendant's appeal is whether an insurer may deny UIM coverage based upon intentional and fraudulent misrepresentations or concealment by an insured in procurement of an automobile liability insurance policy.

Defendants argue that

once a covered loss occurs, required UIM coverage cannot be defeated for any reason, due to the FRA's [The Motor Vehicle Safety and Financial Responsibility Act of 1953] abrogation of [an] insurer's common law rights of retroactive rescission.

Plaintiff responds that the FRA writes UIM coverage only into policies providing liability coverage in excess of the $25,000 per person/$50,000 per accident minimum limits. As a consequence, plaintiff continues, upon a finding of fraud by an insured, the insurer may rescind *ab initio* policy provisions affording coverage greater than the minimum amount mandated by the FRA, and thus UIM coverage in excess of the minimum liability amounts would not be available. We agree.

The version of the FRA applicable to the instant action contained the following relevant provisions:

(b) Such owner's policy of liability insurance:

(4) Shall . . . provide underinsured motorist coverage, to be used only with policies that are written at limits that exceed those prescribed by subdivision (2) of this section [$25,000/$50,000] and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, in an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's policy.

. . . .

(f) Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

(1) Except as hereinafter provided, the liability of the insurance carrier with respect to the insurance required by this Article shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; . . . no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy.

. . . .

(h) Any motor vehicle liability policy may provide that the insured shall reimburse the insurance carrier for any payment the insurance carrier would not have been obligated to make under the terms of the policy except for the provisions of this Article.

N.C.G.S. § 20-279.21(b)(4), (f), (h) (1987).

The issue herein is one of first impression, and we therefore must ascertain from the statutory language whether the General Assembly intended UIM coverage to survive finding of an insured's fraudulent and intentional misrepresentations in obtaining the liability insurance policy. *See Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989) (" 'cardinal principle of statutory construction is that the intent of the legislature is controlling,' " and may be ascertained from phraseology of statute, nature and purpose of the legislation, and consequences which would follow construction one way or the other (citations omitted)).

Protection of innocent victims who may be injured by financially irresponsible motorists has repeatedly been held to be the fundamental purpose of the FRA. *Nationwide Mutual Ins. Co. v. Mabe*, 342 N.C. 482, 493, 467 S.E.2d 34, 41 (1996). This purpose is best served when the statute is interpreted to provide the innocent victim with the fullest possible protection. *Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 224-25, 376 S.E.2d 761, 763 (1989). *See also Sutton*, 325 N.C. at 265, 382 S.E.2d at 763 (the FRA is "remedial statute [which must be] liberally construed so that the beneficial purpose intended by its enactment may be accomplished.") Notwithstanding, it is also our well-established duty to avoid interpretation of the FRA in a manner which would result in "injustice" or produce "absurd consequences," particularly when "the statute may reasonably be otherwise consistently construed with the intent of the act." *Mabe*, 342 N.C. at 494, 467 S.E.2d at 41 (citations omitted).

Both parties cite *Odum v. Nationwide Mutual Ins. Co.*, 101 N.C. App. 627, 401 S.E.2d 87 (1991), as authority for their diverging con-

tentions concerning interpretation of the statutory provisions at issue. The question in *Odum* was

> whether the insurer on an automobile liability policy can avoid liability after an injury has occurred on the ground that the policy was procured by the insured's deliberate and material misrepresentations on the application.

*Odum*, 101 N.C. App. at 631, 401 S.E.2d at 89. This Court ruled the General Assembly had addressed such a circumstance in G.S. § 20-279.21(f)(1), wherein it specified

> the liability of the insurance carrier with respect to the insurance *required* by this Article shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs.

*Id.* at 632, 401 S.E.2d at 91 (emphasis altered). Therefore, as to coverage *required* by the FRA, fraud in an application for motor vehicle liability insurance is not a defense to the insurer's liability once injury has occurred. *Id.* at 634, 401 S.E.2d at 91. However,

> as to any coverage in excess of the statutory minimum, the insurer is not precluded by statute or public policy from asserting the defense of fraud. Such a defense, if successful, would insulate the insurer against liability as to both the insured . . . and the injured third party.

*Id.* at 635, 401 S.E.2d at 92 (emphasis omitted).

Under *Odum*, therefore, the minimum liability coverage of $25,000/$50,000 mandated by the FRA becomes "absolute" upon the occurrence of injury or damage, G.S. § 20-279.21(f)(1), *id.* at 632, 401 S.E.2d at 91. Accordingly, we conclude the trial court erred by ordering rescission of the policy *in toto* based upon the jury's finding of fraud by Mr. and Mrs. Lucas. However, the dispositive issue herein is whether $700,000 *UIM* coverage in the policy was "*required* by" the FRA, *Odum*, 101 N.C. App. at 634, 401 S.E.2d at 91, and therefore recoverable notwithstanding the fraud of Mr. and Mrs. Lucas.

Contrary to defendants' suggestion that UIM coverage is "required" or "deemed mandatory" in *all* liability policies, thereby effectively and totally precluding an insurer's retroactive rescission pursuant to G.S. § 20-279.21(f)(1), our Courts have consistently interpreted G.S. § 20-279.21(b)(4), *supra.*, to write UIM coverage into policies by statutory mandate, subject to the insured's rejection, "only

if the policyholder has liability insurance in excess of the minimum statutory requirement . . . ." *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 147, 400 S.E.2d 44, 50 (1991). *See also Hendrickson v. Lee*, 119 N.C. App. 444, 449-50, 459 S.E.2d 275, 278-79 (1995); and *Hollar v. Hawkins*, 119 N.C. App. 795, 797, 460 S.E.2d 337, 338 (1995)(because "the policy provided only the minimum statutorily required coverage of $25,000 per person/$50,000 per accident, the policy was not required to provide UIM coverage under N.C. Gen. Stat. § 20-279.21(b)(4)").

It therefore follows that because "any [liability] coverage in excess of the statutory minimum [$25,000/$50,000]," *Odum*, 101 N.C. App. at 635, 401 S.E.2d at 92 (emphasis omitted), was void *ab initio* in consequence of the jury's determination of fraud on the part of Mr. and Mrs. Lucas, no UIM coverage in the policy was required or mandated by G.S. § 20-279.21(b)(4). *See Smith*, 328 N.C. at 147, 400 S.E.2d at 50, and *Hollar*, 119 N.C. App. at 797, 460 S.E.2d at 338. As a result, the UIM provisions contained in the policy did not "become absolute" at the time of loss, G.S. § 20-279.21(f)(1), but rather constituted "coverage in excess of the statutory minimum, [and thus] [plaintiff] [was] not precluded by statute or public policy from asserting the defense of fraud." *Odum*, 101 N.C. App. at 635, 401 S.E.2d at 92 (emphasis omitted). Because this defense was ultimately successful, it effectively "insulate[d] [plaintiff]" against defendants' claim to $700,000 UIM coverage. *See id.*

We believe the foregoing interpretation and consequential resolution to be both "fair" and "within the spirit of *Odum*," as plaintiff contends. Significantly, it also avoids the "injustice" and "absurd consequences," *see Mabe*, 342 N.C. at 494, 467 S.E.2d at 41, which would result if defendants were allowed recovery of $700,000 UIM coverage on behalf, *inter alia*, of Mr. and Mrs. Lucas, despite the jury verdict of fraud by the couple, while, under *Odum*, the policy would have provided no more than $25,000/$50,000 liability coverage to an innocent third party victim of the negligence of Mr. and Mrs. Lucas. *See Odum*, 101 N.C. App. at 635, 401 S.E.2d at 92 (successful fraud defense "would insulate insurer against liability as to both the insured . . . and the [innocent] injured third party").

We also summarily reject defendants' remaining contention that the trial court erred by allowing into evidence property tax records of Mr. and Mrs. Lucas. Assuming *arguendo* defendants' objection to admission of this evidence has not been waived, *see Beaver v.*

*Hampton*, 106 N.C. App. 172, 177, 416 S.E.2d 8, 11 (1992) ("it is not sufficient to simply file a pretrial motion *in limine* to exclude evidence which the trial judge has not heard," but "to preserve for appeal matter underlying a motion *in limine*, the movant must make at least a general objection when the evidence is offered at trial"), we find the records were relevant to the question of the residence of Mr. and Mrs. Lucas as it pertained to plaintiff's claim of fraud. *See* N.C.R. Evid. 401.

Based on the foregoing, the judgment of the trial court ordering rescission of provisions in the policy for UIM coverage and liability coverage in excess of the statutory minimum is affirmed; however, the judgment of rescission *in toto* is reversed. As liability coverage is not at issue herein, no remand is necessary to preserve defendant's rights. Having resolved this appeal in favor of plaintiff, we decline to address its remaining arguments.

Affirmed in part; reversed in part.

Judges EAGLES and LEWIS concur.