FORTUNE INSURANCE COMPANY v. GARY EDGAR OWENS, JOHNA R. HART, LOUIS L. GILMORE

No. 154PA99

(Filed 7 April 2000)

### 1. Insurance— automobile—Florida policy—accident in this state—no significant connection—Florida law

A significant connection did not exist between the insured interests and North Carolina to make a no-fault automobile liability policy issued in Florida subject to North Carolina law under N.C.G.S. § 58-3-1 for an accident that occurred in this state, although the insured had a temporary North Carolina address, where the insurance contract was entered into in Florida and the parties to the contract were Florida residents. The mere presence of the insured interests in this state at the time of the accident did not constitute a sufficient connection to warrant application of North Carolina law, and the policy must be construed in accordance with Florida law.

### 2. Insurance— automobile—Florida policy—accident in this state—conformity clause—Florida law

An automobile liability policy issued in Florida was not subject to the North Carolina Motor Vehicle Safety and Financial Responsibility Act pursuant to N.C.G.S. § 20-279.21(a) for an accident in this state because it contained a conformity clause amending the policy to conform to any law to which it was subject where the Florida insurer was not authorized to transact business and issue policies in North Carolina.

**3. Insurance— automobile—Florida policy—accident in this state—no bodily injury coverage**

A no-fault automobile policy issued to the tortfeasor in Florida did not provide bodily injury coverage to defendants for an accident in this state where defendants were not named insureds, relatives, occupants of the insured vehicle, or pedestrians.

**4. Estoppel— automobile accident—tort action—insurer's withdrawal of counsel—victims not misled**

A Florida insurer was not estopped to deny coverage for an accident in this state under a no-fault policy issued to the tortfeasor in Florida because the insurer had its counsel withdraw from defending an action against the tortfeasor two years after the action was instituted where the insurer filed a declaratory judgment action seeking a declaration that the policy did not provide coverage for bodily injury to the accident victims, the victims were thus fully aware of the insurer's position regarding coverage eighteen months before trial of the underlying tort action commenced, and the victims were not misled or prejudiced at trial by the insurer's withdrawal of counsel from the tortfeasor's defense.

Justice MARTIN concurring in the result.

Justices LAKE and FREEMAN join in this concurring opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 132 N.C. App. 489, 512 S.E.2d 487 (1999), affirming a judgment entered 6 October 1997, as amended 13 October 1997, by Sitton, J., in Superior Court, Mecklenburg County. Heard in the Supreme Court 12 October 1999.

*Kurdys & Lovejoy, P.A., by Jeffrey S. Bolster, for plaintiff-appellee.*

*Price, Smith, Hargett, Petho & Anderson, P.A., by Wm. Benjamin Smith, for defendant-appellants Johna Hart and Louis Gilmore.*

PARKER, Justice.

This action arose out of a motor vehicle accident that occurred in Mecklenburg County, North Carolina, on 29 January 1990 when a

vehicle, owned and operated by Gary Edgar Owens (Owens) struck a motor vehicle driven by Louis L. Gilmore and occupied by Johna R. Hart (defendants). That vehicle was owned by a third party and was not insured. At the time of the accident, Owens was insured under a policy of insurance issued by Fortune Insurance Company (Fortune), a Florida corporation. The policy provided, in pertinent part:

### CONFORMITY WITH LAW

If any provision of this policy is contrary to any law to which it is subject, such provision is hereby amended to conform thereto.

### COVERAGE: PERSONAL INJURY PROTECTION

[Fortune] will pay, in accordance with the Florida Motor Vehicle No Fault Law, as amended, to or for the benefit of the insured person [enumerated damages] incurred as a result of bodily injury, caused by an accident arising out of the ownership, maintenance, or use of a motor vehicle and sustained by:

1. the named insured or any relative while occupying a motor vehicle or, while a pedestrian, through being struck by a motor vehicle; or

2. any other person while occupying the insured motor vehicle or, while a pedestrian, through being struck by the insured motor vehicle.

Both defendants instituted actions against Owens in January 1993, each claiming damages for personal injury. Fortune hired attorney Rex C. Morgan in Charlotte, North Carolina, to defend Owens in both actions. Mr. Morgan filed answers on Owens' behalf despite the fact that he was never able to locate Owens. On 17 July 1995 Mr. Morgan filed a motion to withdraw as counsel of record wherein he stated that Fortune "advised that it had sent a reservation of rights letter to Mr. Owens and advised that it took the position that it had no coverage" and that Fortune had instructed that he "close his files."

On 21 July 1995 Fortune instituted this declaratory judgment action requesting the court to declare that Fortune had no obligation to defend Owens or to pay any judgment entered against Owens in the actions by defendants. Fortune thereafter amended its petition for declaratory judgment asserting that Fortune is a corporation existing under the laws of the State of Florida. In their answer filed 20 September 1995, defendants asserted that Fortune should be

"estopped to deny coverage." On 31 July 1997 Fortune moved for summary judgment.

On 20 January 1997 defendants' actions against Owens were consolidated and tried at a nonjury Civil Session of Superior Court, Mecklenburg County. In its judgment the trial court concluded that Owens was liable to both defendants for personal injuries and ordered Owens to pay each defendant $18,500. Defendants subsequently filed a motion to amend their answer in this action to add a counterclaim incorporating the judgment in the underlying action and asking for costs, treble damages, and punitive damages. The trial court denied the motion to amend on 24 July 1997.

In October 1997 after a hearing on Fortune's petition for declaratory judgment, the trial court entered judgment finding that the Fortune policy was issued to Owens in Florida; that the address listed for Owens on 27 December 1989 was Destin, Okaloosa County, Florida; that the only vehicle described in the application was a 1966 Chevrolet pickup truck with a Florida identification number; that at the time of the accident, Owens had a Florida driver's license; and that Owens was operating the 1966 Chevrolet pickup truck with a Florida license plate and a Florida identification number. The trial court also found that no evidence was adduced to suggest that Fortune was authorized to transact business and issue policies in North Carolina. Based on these and other findings of fact, the trial court concluded that "Florida law does not require the extension of bodily injury liability coverage to defendants" and that the Fortune policy does not provide bodily injury coverage to defendants since "they are not protected persons under the Personal Injury Protection section of the policy." The trial court further concluded that the North Carolina Motor Vehicle Safety and Financial Responsibility Act does not apply to the Fortune policy "given the insignificant connection between the Fortune Insurance Policy and the State of North Carolina." Accordingly, the trial court determined that Fortune was not obligated to pay the judgments obtained by defendants against Owens arising out of the motor vehicle accident.

Defendants appealed to the Court of Appeals, arguing that the Fortune policy is subject to North Carolina law and, alternatively, that Fortune was estopped from denying coverage. On 2 March 1999 the Court of Appeals affirmed the trial court, holding that "the connection between North Carolina and the interests insured is too slight to allow us to interpret the Owens Policy in accordance with North

Carolina law." *Fortune Ins. Co. v. Owens*, 132 N.C. App. 489, 493, 512 S.E.2d 487, 189 (1999). Enforcing the terms of the Fortune policy, the Court of Appeals held that bodily injury liability coverage did not extend to defendants. *Id.* The Court of Appeals also held that Fortune was not estopped from denying coverage. *Id.* at 494, 512 S.E.2d at 494. On 24 June 1999 this Court allowed defendants' petition for discretionary review.

The two issues before this Court are whether the Court of Appeals correctly concluded (i) that the Fortune insurance policy was not subject to North Carolina law and did not provide coverage to defendants and (ii) that Fortune was not estopped from denying coverage. With respect to the coverage issue, defendants make three arguments.

[1] Defendants first argue that the Court of Appeals erred in holding that a significant connection did not exist between the insured interests and North Carolina to make the policy subject to North Carolina law. We disagree. As the Court of Appeals properly noted, the general rule is that an automobile insurance contract should be interpreted and the rights and liabilities of the parties thereto determined in accordance with the laws of the state where the contract was entered even if the liability of the insured arose out of an accident in North Carolina. *See Roomy v. Allstate Ins. Co.*, 256 N.C. 318, 322, 123 S.E.2d 817, 820 (1962). With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract. *Id.* Construing N.C.G.S. § 58-3-1, this Court recognized an exception to this general rule where a close connection exists between this State and the interests insured by an insurance policy. *See Collins & Aikman Corp. v. Hartford Accident & Indem. Co.*, 335 N.C. 91, 95, 436 S.E.2d 243, 245-46 (1993). However, the mere presence of the insured interests in this State at the time of an accident does not constitute a sufficient connection to warrant application of North Carolina law.

When an action is tried before the trial court without a jury, the trial court is the fact finder; and on appeal, the appellate courts are bound by the trial court's findings if competent evidence in the record supports these findings. *See Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975). In this case the trial court found, based on competent evidence, that the policy was issued by Fortune to Owens in Florida; that the insured vehicle which Owens was dri-

ving at the time of the accident had a Florida identification number and a Florida license plate; that from 5 March 1976 until the date of the accident, Owens had a Florida driver's license issued to him; that according to the record at the North Carolina Division of Motor Vehicles, Owens never had a North Carolina driver's license issued to him; and that the only contact between the Fortune policy and North Carolina is that "the automobile accident on January 29, 1990, occurred in North Carolina and following the accident Gary Edgar Owens provided the officer with a temporary North Carolina address." Based on these findings, we hold that the Court of Appeals did not err in upholding the trial court's conclusion that no significant connections existed between the Fortune policy and this State. All of the significant connections occurred in Florida. The insurance contract was entered into in Florida, and the parties to the contract were Florida residents. Thus, the Fortune policy must be construed in accordance with Florida law.

[2] Defendants next contend that the conformity clause triggers the application of the North Carolina Motor Vehicle Safety and Financial Responsibility Act. Again we disagree. The Act applies only to a "motor vehicle liability policy" that is "issued, except as otherwise provided in G.S. 20-279.20, by an insurance carrier duly authorized to transact business in this State." N.C.G.S. § 20-279.21(a) (1999). The trial court found, and we agree, that the evidence does not suggest that Fortune was ever authorized to transact business and issue insurance policies in North Carolina. The mere fact that the accident happened in North Carolina does not make the policy subject to North Carolina law. As the United States Supreme Court has noted,

> [a] legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the forum regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment.

*Hartford Accident & Indem. Co. v. Delta & Pine Land Co.*, 292 U.S. 143, 150, 78 L. Ed. 1178, 1181-82 (1934).

Defendants' reliance on *Cartner v. Nationwide Mut. Fire Ins. Co.*, 123 N.C. App. 251, 472 S.E.2d 389 (1996), is misplaced. In *Cartner* the Court of Appeals held that a Florida insurance policy

with a family-members exclusion and a conformity clause provided coverage to the estate of the plaintiff's decedent for an accident occurring in this state. *Cartner* is distinguishable in that the conformity clause in that case provided for the adjustment of coverage limits "to comply with the financial responsibility law of any state or province which requires higher limits." *Id.* at 252, 472 S.E.2d at 390. In contrast, the conformity clause in the policy at issue in the instant case provided that "[i]f any provision of this policy is contrary to any law to which it is subject, such provision is hereby amended to conform thereto." Moreover, the defendant insurance company in *Cartner* was authorized to and did transact business in North Carolina. Under the North Carolina Motor Vehicle Safety and Financial Responsibility Act, the provisions for uninsured/underinsured motorists coverage are designed to protect North Carolina drivers from the perils of a collision with an uninsured motor vehicle. We hold that the conformity provision does not alter our conclusion that the Fortune policy is not "subject to" North Carolina law.

[3] Defendants finally argue that the policy provides coverage to them and that plaintiff failed to establish a valid policy exclusion showing no coverage. This argument is not persuasive. A party seeking benefits under an insurance contract has the burden of showing coverage. *See Hedgecock v. Jefferson Standard Life Ins. Co.*, 212 N.C. 638, 639-40, 194 S.E. 86, 86-87 (1937). Until a *prima facie* case of coverage is shown, the insurer has no burden to prove a policy exclusion. *See id.; see also Nationwide Mut. Ins. Co. v. McAbee*, 268 N.C. 326, 328, 150 S.E.2d 496, 497-98 (1966); *U.S. Liab. Ins. Co. v. Bove*, 347 So. 2d 678, 680 (Fla. Dist. Ct. App. 1977). In this case the clear and unambiguous language of Fortune's insurance policy affords no bodily injury coverage to defendants. The Fortune policy provides bodily injury coverage only for the "named insured," "any relative while occupying a motor vehicle," "any other person while occupying the insured motor vehicle," or "a pedestrian . . . struck by the insured motor vehicle." This provision is consistent with Florida's statutory requirements for a no-fault insurance policy. *See* Fla. Stat. Ann. §§ 627.730-627.7405 (West 1996 & Supp. 1999). Defendants were not named insureds, were not relatives, were not occupying the insured vehicle, and were not pedestrians. Accordingly, defendants do not fit into any of the categories of protected individuals; therefore, they are not covered under the terms of the policy.

[4] Defendants also contend that Fortune was estopped to deny coverage since Fortune had its counsel withdraw from the case approxi-

mately two years after it instituted action against Owens. We disagree. Generally, an insurer is not barred from later denying coverage when it defends its insured with a reservation of its rights to deny coverage. *See Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 266 N.C. 430, 435, 146 S.E.2d 410, 414 (1966). We have applied the equitable estoppel doctrine to bar an insurer from later denying coverage where the insurer assumed the defense of the action without a reservation of rights to deny coverage and later disclaimed coverage after an adverse judgment was entered. *Early v. Farm Bureau Mut. Auto. Ins. Co.*, 224 N.C. 172, 174, 29 S.E.2d 558, 559-60 (1944).

On appeal to this Court, no reservation of rights letter is contained in the record. However, Mr. Morgan, in his motion to withdraw as attorney of record in the underlying actions on 17 July 1995, stated that Fortune "advised that it had sent a reservation of rights letter to Mr. Owens and advised that it took the position that it had no coverage." Consistent with this position, Fortune also filed a declaratory judgment action on 21 July 1995 seeking a declaration that the policy did not provide coverage to defendants. Therefore, defendants were fully aware of Fortune's position regarding coverage eighteen months before trial of the underlying tort action commenced on 20 January 1997. On these facts we conclude that defendants were not misled and were not prejudiced at trial by Fortune's withdrawal of counsel from Owens' defense.

For the foregoing reasons, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice MARTIN concurring in the result.

I concur in the result of the majority opinion but write separately to articulate my disagreement with part of the reasoning of the majority opinion and to express my concern about the result we are compelled to reach under the relevant language of the North Carolina Motor Vehicle Safety and Financial Responsibility Act (the Act).

I respectfully disagree with the majority's conclusion that the general rule of *lex loci contractus* controls in this case. Rather, North Carolina's contacts with the interests insured by the Fortune policy are sufficient to make the policy "subject to" North Carolina law under N.C.G.S. § 58-3-1. *See Collins & Aikman Corp. v. Hartford*

*Accident & Indem. Co.*, 335 N.C. 91, 95, 436 S.E.2d 243, 246 (1993); *see also Martin v. Continental Ins. Co.*, 123 N.C. App. 650, 655-56, 474 S.E.2d 146, 148-49 (1996).

Nevertheless, as determined by the majority, the minimum limits of coverage set forth in the Act do not apply to the Fortune policy because of the language of this statute. In short, the Act applies only to a "motor vehicle liability policy" that is "issued . . . by an insurance carrier duly authorized to transact business in this State." N.C.G.S. § 20-279.21(a) (1999). Because the Fortune policy was not issued in North Carolina and Fortune is not authorized to transact business in this state, the Fortune policy may not be conformed to the minimum limits of the Act under the express language of the statute.

It is well settled, however, that legal protection of innocent victims who are injured by financially irresponsible motorists is the fundamental purpose of the Act. *See Nationwide Mut. Ins. Co. v. Aetna Life & Cas. Co.*, 283 N.C. 87, 90, 194 S.E.2d 834, 837 (1973); *Hartford Underwriters Ins. Co. v. Becks*, 123 N.C. App. 489, 492, 473 S.E.2d 427, 429 (1996), *disc. rev. denied and cert. denied*, 345 N.C. 641, 483 S.E.2d 708 (1997).

In the instant case, a motor vehicle operator who was at least temporarily residing in North Carolina negligently inflicted injuries upon two North Carolina residents. Nevertheless, because the responsible driver's insurance policy was issued in a no-fault state and incorporated no-fault provisions which do not afford liability coverage under these circumstances, the injured parties, two North Carolina residents, are left without an adequate legal remedy.

This result is fundamentally at odds with the purpose of the North Carolina Motor Vehicle Safety and Financial Responsibility Act. Under the result permitted in this case, otherwise eligible drivers may obtain insurance in no-fault jurisdictions and inflict injuries with practical impunity. This result is inconsistent with the increasing interstate mobility of our society and renders meaningless the protections intended for innocent motorists under the Act.

Justices LAKE and FREEMAN join in this concurring opinion.