UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-1476

BREEZEWOOD OF WILMINGTON CONDOMINIUMS HOMEOWNERS'
ASSOCIATION, INCORPORATED,

Plaintiff - Appellant,

v.

AMERISURE MUTUAL INSURANCE COMPANY,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington. James C. Dever III,
District Judge. (7:07-cv-00050-D)

Argued: March 25, 2009                   Decided: July 1, 2009

Before DUNCAN, Circuit Judge, Robert J. CONRAD, Jr., Chief
United States District Judge for the Western District of North
Carolina, sitting by designation, and Thomas D. SCHROEDER,
United States District Judge for the Middle District of North
Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

Brian Schoolman, SAFRAN LAW OFFICES, Raleigh, North Carolina,
for Appellant. Tracy Lynn Eggleston, COZEN O'CONNOR, Charlotte,
North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Breezewood of Wilmington Condominiums Homeowners' Association, Inc. ("Breezewood CHOA") sought a declaratory judgment that Amerisure Mutual Insurance Company ("Amerisure") had a duty to defend and indemnify its insured, Quality Built Construction, Inc. ("Quality Built"), in whose shoes Breezewood CHOA stands by assignment, with respect to state court claims arising out of the construction of a condominium development. The district court granted Amerisure's motion for summary judgment. We conclude that Amerisure had no duty to defend Quality Built and therefore affirm.

I.

Quality Built served as general contractor for a condominium development in Wilmington, North Carolina (the "Condominium Development"). On May 28, 2004, Breezewood CHOA filed a complaint in North Carolina state court against Quality Built and the Condominium Development developers,[1] alleging defects in construction and design of the Condominium Development buildings that necessitated "extraordinary repairs and reconstruction of major portions of the common elements" (the "Underlying Complaint"). (J.A. 38-39.) Approximately a

---

[1] Breezewood of Wilmington, Inc., and Breezewood of Raleigh, Inc., were the developers for the Condominium Development.

2

year later, in May 2005, Quality Built notified Amerisure of the Underlying Complaint and submitted a claim under its commercial general liability insurance (the "CGL policy") for damage to the building components and resulting loss of use. Amerisure denied coverage on May 25, 2005, on the ground that the Underlying Complaint did not allege "property damage" caused by an "occurrence."[2] (J.A. 231-33.) Breezewood CHOA subsequently settled with Quality Built and one of the developers, accepting a $2,000,000 judgment and an assignment of Quality Built's rights against Amerisure.

Breezewood CHOA initiated the present lawsuit in the district court, seeking a declaratory judgment that Amerisure breached its duty to defend Quality Built against the Underlying Complaint. Amerisure counterclaimed, seeking a declaratory judgment that Amerisure had no duty to defend Quality Built. On cross-motions for summary judgment, the district court granted Amerisure's motion and denied Breezewood CHOA's motion. Breezewood CHOA timely appeals the district court's decision.

---

[2] Amerisure also declined coverage and defense based on late notice, but that issue is not before us inasmuch as the district court did not reach it.

II

We exercise jurisdiction over this appeal under 28 U.S.C. § 1291. A district court's grant of summary judgment is reviewed de novo. Jennings v. Univ. of N.C. at Chapel Hill, 482 F.3d 686, 694 (4th Cir. 2007) (en banc). Because this is a diversity action, we apply the law of North Carolina, which treats the interpretation of insurance policy provisions as a question of law. ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co., 472 F.3d 99, 115 (4th Cir. 2006); N.C. Farm Bureau Mut. Ins. Co. v. Briley, 127 N.C. App. 442, 444, 491 S.E.2d 656, 658 (1997). Insurance policies are construed in accordance with traditional rules of contract interpretation, so where the meaning of the policy is clear and only one reasonable interpretation exists the courts must enforce the contract as written. Patrick v. Wake County Dep't of Human Servs., 188 N.C. App. 592, 596, 655 S.E.2d 920, 924 (2008) (citing Dawes v. Nash County, 357 N.C. 442, 448, 584 S.E.2d 760, 764 (2003)). The party seeking benefits under an insurance contract bears the burden of showing coverage for its claim. Fortune Ins. Co. v. Owens, 351 N.C. 424, 430, 526 S.E.2d 463, 467 (2000). Until the insured makes a prima facie case of coverage, the insurer has no burden to prove the applicability of any policy exclusion. Id. at 430, 526 S.E.2d at 467.

An insurer's duty to defend is broader than its duty to indemnify -- the former ordinarily being measured by the facts as alleged in the pleadings while the latter by facts ultimately determined at trial. Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). North Carolina applies the "comparison test" to determine whether the damage alleged by the insured is covered by the insurer's policy. Id. at 693, 340 S.E.2d at 378. Under the comparison test, "the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." Id. at 693, 340 S.E.2d at 378; Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., ___ N.C. App. ___, 664 S.E.2d 317, 320 (2008). If the pleadings "state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Waste Mgmt., 315 N.C. at 391, 340 S.E.2d at 377. This is true even if the pleadings describe a hybrid of covered and excluded events or "disclose a mere possibility that the insured is covered." Id. at 391 n.2, 340 S.E.2d at 377 n.2. On the other hand, if the pleadings "allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend." Id. at 391, 340 S.E.2d at 377.

However, once "the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy," the duty to defend is not dismissed simply because the facts alleged in the complaint appear to be outside coverage. Waste Mgmt., 315 N.C. at 691, 340 S.E.2d at 377-78. Thus, the insurer has a "duty to investigate and evaluate facts expressed or implied in the []complaint as well as facts learned from the insured and from other sources." Id. at 691; 340 S.E.2d at 378; accord Duke Univ. v. St. Paul Fire and Marine Ins. Co., 96 N.C. App. 635, 638, 386 S.E.2d 762, 764 (1990). Any doubt as to coverage is resolved in favor of the insured. Waste Mgmt., 315 N.C. at 693, 340 S.E.2d at 378. If it is later determined that an insurer breached its duty to defend, "the insurer is estopped from denying coverage and is obligated to pay the amount of any reasonable settlement made in good faith by the insured of the action brought against him by the injured party." Pulte Home Corp. v. Am. S. Ins. Co., 185 N.C. App. 162, 165, 647 S.E.2d 614, 617 (2007) (citation omitted).

III.

With these principles in mind, we turn to the interpretation of the terms of the CGL policy in this case.[3] The CGL policy requires Amerisure to pay those sums Quality Built becomes legally obligated to pay because of "property damage" "caused by an 'occurrence' that takes place in the 'coverage territory' and . . . during the policy period." (J.A. 79.) The dispute in this case is whether Breezewood CHOA alleged "'property damage' caused by an 'occurrence.'" Because we conclude that the allegations do not allege "property damage" covered by the CGL policy, we do not address whether Breezewood CHOA alleged the existence of an "occurrence."

A.

Where an insurance policy defines a term, that definition is to be used in interpreting the pertinent provision. C.D. Spangler Constr. Co. v. Indus. Crankshaft and Eng'g Co., 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990). The CGL policy defines "property damage" as follows:

> (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

[3] Amerisure issued both an Umbrella Liability Policy and the CGL policy in favor of Quality Built, and the pertinent insuring provisions and definitions contained in both are identical. Because Breezewood CHOA addresses only the CGL policy on appeal our analysis involves only the provisions of that policy.

7

        (b) Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

(J.A. 91.)

North Carolina state courts and federal courts sitting in diversity have consistently held that "property damage" in the context of commercial general liability policies means "damage to property that was previously undamaged" and does not include "the expense of repairing property or completing a project that was not done correctly or according to contract in the first instance" by the insured.  Prod. Sys., Inc. v. Amerisure Ins. Co., 167 N.C. App. 601, 606, 605 S.E.2d 663, 666 (2004) (citing Hobson Constr. Co. v. Great Am. Ins. Co., 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984)); accord W. World Ins. Co. v. Carrington, 90 N.C. App. 520, 524-25, 369 S.E.2d 128, 130-31 (1998); Wm. C. Vick Constr. Co. v. Penn Nat'l Mut. Cas. Ins. Co., 52 F. Supp. 2d 569, 581 (E.D.N.C. 1999), aff'd per curiam, 213 F.3d 634 (4th Cir. 2000).  The rationale underlying this view is that "the quality of the insured's work is a 'business risk' which is solely within his own control," and that "liability insurance generally does not provide coverage for claims arising out of the failure of the insured's product or work to meet the quality or specifications for which the insured may be liable as a matter of contract."  W. World, 90 N.C. App.

8

at 523, 369 S.E.2d at 130.  Rather, such business risks are the purpose of performance bonds, not liability insurance policies. Id.; see also 9A Lee R. Russ & Thomas F. Segalla, Couch on Insurance, § 129.1 (3rd ed. 2008) (explaining that general commercial liability policies do not cover business risks that "occur as a consequence of the insured not performing well and [are] a component of every business relationship that is necessarily borne by the insured in order to satisfy its customers").

This view was also recognized in Travelers Indemnity Co. v. Miller Building Corp., 97 F. App'x 431, 434 (4th Cir. 2004) (unpublished) ("Miller I"), a case upon which both parties rely heavily.  In Miller I, this Court addressed the definition of "property damage" under North Carolina law in a commercial general liability insurance policy containing insuring language equivalent to that in the Amerisure policy.[4]  The general contractor was insured under a commercial general liability policy and constructed a hotel that suffered damage after its completion.  Id. at 432.  Due to the damage to the hotel, the

---

[4] Although Miller I was unpublished and holds no precedential authority, its factual scenario renders it worthy of consideration given the facts before us.  See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

developer refused to pay the general contractor. Id. The general contractor initiated arbitration proceedings against the developer, who counterclaimed for the cost of repairing the construction defects and the damage. Id. at 432-33. The insurer sought a declaratory judgment that it was not obligated to defend the general contractor against the developer's counterclaims. Id. at 433.

In construing the definition of "property damage," this Court recognized that under North Carolina law "to fall within the scope of a general liability policy, the property allegedly damaged has to have been undamaged or uninjured at some previous point in time." Id. at 433-34 (citation omitted). The Court concluded that the underlying allegations were claims for defective construction and that "property damage" does not contemplate faulty workmanship. Id. at 434. However, the general contractor's faulty installation of windows and sliding glass doors caused water damage to guest-room carpet that had been provided (undamaged) by the hotel owner. Id. The insurer argued that such damage was not covered because the carpet was a component of the "defective-from-the-beginning hotel," which was not "previously undamaged." Id. This Court held that the damage to the carpet fell within the scope of "property damage" because it was "separate tangible property" from the hotel inasmuch as it had been supplied by the owner, not the general

10

contractor. Id. While the insurer's argument "might have some force . . . as to another component of the hotel," the opinion noted, the owner-provided guest-room carpet must be viewed as "separate from the hotel, not an undifferentiated component of the hotel, and the damage to that carpet as a discrete form of property damage." Id. The district court's grant of summary judgment to the insurance company was vacated and the case remanded. Id. at 437.

On remand, the district court determined that coverage under the commercial general liability policy "extends to damage to property separate from the hotel that was not subjectively foreseeable" to the general contractor (i.e., an "occurrence"). Travelers Indem. Co. v. Miller Bldg. Co., 221 F. App'x 265, 267 (4th Cir. 2007) (unpublished) ("Miller II"). In affirming the district court's decision, this Court restated that "the only claims that could fall within the definition of 'property damage,' as we construed North Carolina law, were those that alleged damages to the owner's own property that was separate from the hotel." Id. at 269. The opinion specifically noted that between Miller I and Miller II, the North Carolina Court of Appeals clarified the definition of "property damage" in Production Systems Inc. v. Amerisure Insurance Co., 167 N.C. App. 601, 605 S.E.2d 663 (2004), and its interpretation was

11

consistent with the Miller I analysis.  Miller II, 221 F. App'x at 269.

Production Systems involved a contractor who defectively installed conveyor belts in two oven feed line systems.  167 N.C. App. 602-603, 605 S.E.2d at 664.  The insured-contractor was responsible for "designing, building and installing the two line systems."  Id. at 603, 605 S.E.2d at 664.  "[D]efective conveyor belt assemblies caused damage to other [correctly installed] parts of the oven line system" resulting in loss of use of the line system.  Id. at 603, 605 S.E.2d at 664.  The trial court concluded there was no "property damage" under virtually identical insuring provisions.  Id. at 605-07, 605 S.E.2d at 666-67.  The North Carolina Court of Appeals affirmed, reiterating that "property damage" contemplates coverage of "damage to property that was previously undamaged, and not the expense of repairing property or completing a project that was not done correctly or according to contract in the first instance."  Id. at 606, 605 S.E.2d at 666.  The court then stated:  "We conclude that under the precedent of Hobson, 'property damage' does not refer to repairs to property necessitated by an insured's failure to properly construct the property to begin with."  Id. at 607, 605 S.E.2d at 666 (citing Hobson Constr. Co., Inc. v. Great Am. Ins. Co., 71 N.C. App. 586, 322 S.E.2d 632). The North Carolina Court of Appeals then

12

applied this conclusion to the facts and held that "there was no 'property damage' to the oven feed line systems because the only 'damage' was repair of defects in, or caused by, the faulty workmanship in the initial construction." Id. at 607, 605 S.E.2d at 667 (emphasis added). The trial court's grant of summary judgment dismissing the case was affirmed. Id. at 607, 605 S.E.2d at 667.

With this outline of the case law in mind, we turn to the issues in this case.

B.

The insured, in this case Breezewood CHOA standing in the shoes of Quality Built, bears the burden of proving coverage under the CGL policy. Fortune Ins. Co. v. Owens, 351 N.C. 424, 430, 526 S.E.2d 463, 467 (2000). Breezewood CHOA makes the following arguments: (1) the Underlying Complaint alleges events covered by the CGL policy; (2) if it does not, sufficient facts were discoverable so as to warrant coverage; and (3) loss of use resulting from the damage should be covered.

1.

The Underlying Complaint charges that "[p]roblems and defects have been discovered as a result of defective design and/or construction." (J.A. 38.) It provides a non-exhaustive list of fourteen "defects in construction and design complained of," and alleges that "[a]s a direct and proximate result of the

13

above-referenced design and construction deficiencies, Breezewood [C]HOA has [spent] and will continue to spend substantial sums of money for the extraordinary repairs and reconstruction of major portions of the common elements." (J.A. 38-39.) The Underlying Complaint alleges causes of action for, among other things, construction negligence (failure to "deliver the project free of construction defects and design and built in conformity with the customary and ordinary standards of the building and construction industry"), breach of duty (to "supervise and review the design and otherwise deliver the project free of construction defects and design"), breach of express warranty ("that the buildings would be free from construction defects"), breach of implied warranty (that "the project would be constructed in a careful, diligent, and workmanlike manner, free of construction defects"), unfair and deceptive trade practices (failure to "disclose design and/or construction defects"), and fraud. (J.A. 39-45.) The Underlying Complaint seeks compensatory and punitive damages for "extraordinary repairs, maintenance and reconstruction costs." (J.A. 40-41, 44, 46.)

Breezewood CHOA's allegations in the Underlying Complaint squarely allege faulty workmanship by the insured and damages associated with repairing the deficient construction. Under North Carolina law, such allegations do not constitute property

14

damage. Prod. Sys. Inc. v. Amerisure Ins. Co., 167 N.C. App. 601, 607, 605 S.E.2d 663, 667 (2004) (holding "property damage" does not include "repair of defects in, or caused by, the faulty workmanship in the initial construction"). Breezewood CHOA also charges that Quality Built did not construct the Condominium Development according to contract in the first instance. Costs associated with bringing the project into compliance with Breezewood CHOA's contractual expectations is not "property damage" covered by a CGL policy. Id. at 606, 605 S.E.2d at 666 (holding "property damage" does not include "the expense of . . . completing a project that was not done correctly or according to contract in the first instance"); Wm. C. Vick Constr. v. Penn Nat'l Mut. Cas. Ins. Co., 52 F. Supp. 2d 569, 582 (E.D.N.C. 1999), aff'd per curiam, 213 F.3d 634 (4th Cir. 2000). Thus, the district court properly concluded that the Underlying Complaint failed to allege "property damage" under North Carolina law.

2.

Breezewood CHOA contends next that, even if the Underlying Complaint did not establish "property damage," coverage was established when Amerisure was apprised of sufficient facts through two other sources: investigative reports prepared by R.V. Buric Construction Consultants ("Buric"), and a letter from

Breezewood CHOA to Quality Built dated July 25, 2006. We disagree.

In pursuing the allegations in its Underlying Complaint, Breezewood CHOA retained Buric to investigate the cause and extent of the damage to the Condominium Development. Buric prepared two reports, a preliminary report dated January 14, 2005 (the "Buric preliminary report"), and a full report dated May 26, 2006 (the "Buric full report"). It is apparent that the Buric preliminary report was delivered to Amerisure no earlier than Breezewood CHOA's initial notice to Amerisure in May 2005. However, the record is unclear as to whether the Buric full report was provided to Amerisure.[5] Nevertheless, because neither report contains allegations of damage that would be covered under the CGL policy, as noted below, their receipt by Amerisure does not impact our conclusion.

The Buric preliminary report reveals a non-exhaustive list of "exterior building deficiencies and damages," "exterior site and parking lot deficiencies and damages," and "interior building deficiencies and damages" which constitute "violations

---

[5] Breezewood CHOA's counsel could not represent affirmatively at oral argument that the Buric full report had been shared with Amerisure. However, he did point out that Quality Built's counsel testified by affidavit that it would have been his standard practice to forward such documents to Amerisure. Breezewood CHOA's counsel further noted that this assertion by Quality Built's counsel was not contested.

16

of building code or failure to comply with appropriate industry standards." (J.A. 278-79.) It also indicates, however, that "excessive moisture is being introduced into the wood products and may be causing damage." (J.A. 279.) The reported water-related damage was to a "wood rail" and "interior finishes" of the Condominium Development. (Id.) The report concludes that further investigation and testing is needed with respect to "the necessary repairs and the cost for such repairs." (Id.)

The Buric full report specifically attributes "damages to building components" to "Code violations and improper workmanship." (J.A. 348-49.) The report groups the damage into four categories of deficiencies[6] and concludes that "[d]ue to Code violations and improper workmanship, water damage has occurred to the exterior wall sheathing, framing, and other building components at the Breezewood Condominiums." (J.A. 348-49.) The report prefaces its recommendations with the following:

> Construction deficiencies from original construction are causing building problems and damages to the buildings at Breezewood Condominiums. Water intrusion must be stopped and water-damaged and incorrectly installed building components repaired or replaced.

(J.A. 350.)

---

[6] The deficiencies are categorized as "Cladding Systems Installation Deficiencies", "Flashing Installation Deficiencies", "Grading and Drainage Deficiencies", and "Additional Building Deficiencies." (J.A. 348-49.)

17

On July 25, 2006, Breezewood CHOA addressed Amerisure's denial of coverage in a letter to Quality Built, which Quality Built forwarded to Amerisure.[7] The letter states that Breezewood CHOA's claim was "not limited to the correction of defective work, but also includes costs for water damage to other building components which were previously undamaged" when installed, including wall sheathing, framing, hand rails, and metal stairs. (J.A. 236.) The letter concludes that "as a result of the construction performed by Quality Built, water was able to penetrate the exterior of the condominium buildings" and "was a cause of at least some of the damage to the buildings." (J.A. 235.) To be sure, Breezewood CHOA clearly continued to contend that the water damage to the Condominium Development arose out of or was caused by Quality Built's deficient construction.

Based on both Buric reports and the letter, Breezewood CHOA now argues that, even if the faulty workmanship is considered previously damaged property, proper notice was provided that the resulting water damage occurred in previously undamaged property and is therefore covered by the CGL policy. Amerisure responds that Quality Built's product is the Condominium Development as a whole. As such, Breezewood CHOA's allegations of defect, it contends, relate to tangible property which is not separate from

_____

[7] Amerisure acknowledged receipt of the letter in correspondence dated October 23, 2006.

18

the Condominium Development itself. Because the Condominium Development was "defective-from-the-beginning," it reasons, the analysis of Miller I leads to the conclusion that the water-damaged property is not covered "property damage." Travelers Indem. Co. v. Miller Bldg. Corp., 97 F. App'x 431, 434 (4th Cir. 2004) (unpublished).

We do not need to decide whether Quality Built's product is the entire Condominium Development (including all separate buildings) under the "defective-from-the-beginning" argument advanced by Amerisure,[8] because under North Carolina law, not only is the cost of repair or replacement of faulty workmanship not "property damage," but neither is damage to the insured's

---

[8] Miller I supports the inference that, had the carpet been supplied by the insured-general contractor rather than the hotel owner, it would have been considered an undifferentiated component of the hotel and any damage to it would not have constituted covered "property damage." 97 F. App'x at 434-35. Miller I did not so hold, however, merely stating that this argument was "unavailing" with respect to this case because the carpet was supplied by the owner. Id. As an unpublished case, it also lacks precedential authority. However, the same inference can be drawn from Production Systems, where the North Carolina Court of Appeals denied coverage for damage to previously undamaged components of the insured's work resulting from the insured's faulty workmanship. 167 N.C. App. at 603, 605 S.E. 2d at 664 (where the ovens as a whole may have been deemed previously undamaged). This logic also finds support in cases from other jurisdictions. See, e.g., Westfield Ins. Co. v. Sheehan Constr. Co., Inc., 580 F. Supp. 2d 701, 711 (S.D. Ind. 2008) (refusing to treat damage to non-faulty portions of a house as distinct from the faulty workmanship itself and holding under Indiana law that "a general contractor's product is the entire project or house which he built and sold, including components").

19

own work that is "caused by" such faulty workmanship.  Prod. Sys., 167 N.C. App. at 607, 605 S.E.2d at 667 (rejecting coverage as "property damage" for repair work and alleged consequential damages from faulty construction).[9]  Here, Breezewood CHOA's own evidence charges that Quality Built's faulty workmanship caused water damage to the Condominium Development, Quality Built's work.  Thus, it cannot be "property damage" under North Carolina law.

This conclusion is consistent with the CGL policy, read as a whole, which contains a "your work" exclusion to coverage. Henderson v. U.S. Fid & Guar. Co., 124 N.C. App. 103, 108-09, 476 S.E.2d 459, 462 (1996) ("The terms of an insurance policy cannot be read in isolation but must be construed in the context of [the] instrument as a whole.") (citations omitted)).  Like most such policies, the CGL policy contains an exclusion for "'property damage' to 'your work' arising out of it or any part of it."[10]  (J.A. 82.)

---

[9] See also Miller I, 97 F. App'x at 438 (Wilkinson, J., dissenting) (stating that the water damage to the owner's carpet was a direct consequence, and "substantively an extension," of the defective workmanship).

[10] "Your work" is defined in pertinent part as "work or operations performed by you or on your behalf." (J.A. 91.) The record indicates that Quality Built's construction of the Condominium Development falls within this definition as Quality Built was the Condominium Development's builder and general contractor.  The exclusion also requires that the work be "included in the 'products-completed operations hazard,'" which
(Continued)

This Court examined the "your work" exclusion in <u>Limbach Co. LLC v. Zurich American Ins. Co.</u>, 396 F.3d 358 (4th Cir. 2005) (applying Pennsylvania law), where it was noted that "[g]eneral liability insurance policies are intended to provide coverage where the insured's product or work causes personal injury or damage to the person or property <u>of another</u>." <u>Id.</u> at 365 (emphasis added) (quoting <u>Ryan Homes, Inc. v. Home Indem. Co.</u>, 436 Pa. Super. 342, 348-49, 647 A.2d 939, 942 (1994)). The Court observed that the "your work" exclusion does not exclude all property damage arising from an insured's work but "[b]y its plain language . . . only excludes coverage for damage to an insured's work that arises out of the insured's faulty workmanship." <u>Id.</u> The Court thus concluded that the commercial general liability policy covered damage to a third party's work

includes property damage "occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" (J.A. 90.) The record indicates that Genesis Built, Inc. ("Genesis Built"), was the owner of the real estate and buildings in the Condominium Development and held declarant control over the Breezewood CHOA until approximately July 2002. Breezewood CHOA alleged in its First Amended Complaint that Genesis Built was the predecessor of Breezewood of Wilmington. Thus, the record indicates that Quality Built, as the Condominium Development's builder and general contractor, neither owned nor rented the property.

that resulted from the general contractor's effort to repair his faulty workmanship. Id.[11]

Moreover, in French v. Assurance Co. of America, 448 F.3d 693 (4th Cir. 2006) (applying Maryland law), this Court examined in depth the "your work" exclusion and its interplay with the exception for damages caused by the faulty work of a subcontractor. In French, a subcontractor negligently applied exterior synthetic stucco to a house which otherwise had been properly built by the general contractor. 448 F.3d at 704-05. The subcontractor's faulty application caused moisture damage to major portions of the components of the house built by the general contractor. Id. at 704. There, as here, the subcontractor exception provided: "This ['your work'] exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Id. at 698; (J.A. 82.) The Court noted that the subcontractor exception restored coverage limited by the "your work"

---

[11] Accord Missouri Terrazzo Co. v. Iowa Nat'l Mut. Ins. Co., 740 F.2d 647, 650 (8th Cir. 1984) (holding under Missouri law that the "your work" exclusion in a predecessor Insurance Services Office ("ISO") form "did not bar coverage for injury to property other than that of the insured"); Westfield, 580 F. Supp. 2d at 710 (noting under Indiana law that in general two types of risk arise from a contractor's work: the (uncovered) business risk that a contractor will have to pay to repair faulty workmanship; and the (covered) risk that the completed product of the contractor, once relinquished, will cause bodily injury or damage "to property other than the product or completed work itself") (internal citations omitted)).

22

exclusion.  <u>French</u>, 448 F.3d at 706.  The Court also observed that a plain reading, along with a thorough examination of the history of the "your work" provision, compelled the following conclusion: the standard comprehensive general liability policy does not provide coverage to a general contractor to correct defective workmanship of a subcontractor but does provide coverage to the general contractor for the damages caused by the subcontractor's defective workmanship.[12]  <u>Id.</u>  Thus, the damage to the general contractor's work was covered only because it fell within the subcontractor exception to the "your work" exclusion.[13]

---

[12]  Breezewood CHOA's argument that the CGL covers damage caused by the insured's faulty workmanship to the insured's own property would make the subcontractor exception meaningless. The purpose of the subcontractor exception is to restore coverage for damage to the insured's property only to the extent it was caused by a subcontractor's faulty workmanship.  The subcontractor exception thus informs the scope of the "your work" exclusion, <u>Stanley Martin Cos. v. Ohio Cas. Group</u>, No. 07-2102, 2009 WL 367589, at *11 n.2 (4th Cir. Feb. 12, 2009) (applying Virginia law) (unpublished), and Breezewood CHOA's argument is simply incompatible with any reasonable reconciliation of the two.

[13]  <u>See also Stanley Martin</u>, 2009 WL 367589, at *4 (holding under Virginia law that the commercial general liability policy covers mold damage to the general contractor's work caused by a subcontractor's installation of defective trusses but does not cover the replacement cost of the defective trusses).  Both <u>French</u> and <u>Stanley Martin</u> found coverage under the subcontractor exception to the "your work" exclusion and therefore needed to reach the issue of whether an "occurrence" existed to decide the issue of coverage.  Here, we do not reach the "occurrence" issue because we find there is no allegation of covered "property damage."

Our holding today that the CGL policy excludes coverage for damage to an insured's completed property caused by an insured's faulty workmanship is fully consistent with this Court's previous interpretations of the "your work" exception inasmuch as the alleged water damage "arises out of" Quality Built's work within the meaning of the "your work" exclusion and is not alleged to have been performed by a subcontractor.[14]

3.

Finally, Breezewood CHOA argues that Amerisure should have defended the Underlying Complaint because it alleged "loss of use" of the Condominium Development resulting from the damaged property. As noted earlier, the CGL Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." (J.A. 91.) In Production Systems, the plaintiff also sought damages for loss of use of the defective oven line systems while they were being repaired, yet the North Carolina Court of Appeals denied coverage when it held that all damages resulted from "faulty

---

[14] At oral argument, Breezewood CHOA argued that Amerisure's duty to defend was triggered because some of the damage could have been caused by a subcontractor's faulty workmanship. The burden of producing such evidence rests with the party seeking application of the exception to the exclusion – here, Breezewood CHOA. Home Indem. Co. v. Hoechst Celanese Corp., 128 N.C. App. 189, 202, 494 S.E.2d 774, 783 (1998). We find nothing in the record to indicate that any of the water-damaged work at issue was performed by a subcontractor, nor could Breezewood CHOA's counsel represent during oral argument that it was.

24

workmanship in the initial construction." 167 N.C. App. at 607, 605 S.E.2d at 665, 667. Having rejected coverage for faulty workmanship and damage it caused to undamaged property of the insured, it was a logical conclusion to deny coverage as to any loss of use "caused by" the faulty workmanship as well. Accordingly, we conclude that claims of loss of use resulting from Quality Built's allegedly defective construction fall outside the coverage of the CGL policy.

IV.

For the foregoing reasons, we conclude that Breezewood CHOA's allegations do not establish coverage under the CGL policy. Amerisure had no duty to defend and is therefore not liable for indemnity of the loss. Accordingly, the district court's grant of Amerisure's motion for summary judgment is

AFFIRMED.

25