**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1691**

LUMBERMENS MUTUAL CASUALTY INSURANCE COMPANY,

Plaintiff - Appellant,

v.

FIRST INSURANCE SERVICES, INCORPORATED,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Malcolm J. Howard, Senior District Judge.  (5:04-cv-00580-H)

Argued: October 26, 2010           Decided: January 14, 2011

Before WILKINSON and MOTZ, Circuit Judges, and Damon J. KEITH, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Chad Eric Jacobs, DREW, ECKL & FARNHAM, Atlanta, Georgia, for Appellant.  Michael Terry Medford, MANNING, FULTON & SKINNER, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** Paul W. Burke, DREW, ECKL & FARNHAM, Atlanta, Georgia, for Appellant.  William S. Cherry, III, MANNING, FULTON & SKINNER, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury trial began in the Eastern District of North Carolina on May 26, 2009 pursuant to diversity jurisdiction on the plaintiff's claims of breach of fiduciary duty, misrepresentation, and negligence arising under North Carolina law. The plaintiff, an insurer, Lumbermens Mutual Casualty Company a subsidiary of Kemper ("Kemper") alleged that the defendant, First Insurance Services, an independent insurance agency ("FIS") sold one of its homeowners' insurance policies but unlawfully withheld appraisal information. Kemper contended that it would not have provided the insurance coverage had FIS timely informed it of a Wachovia bank appraisal FIS received. The insured home was damaged by fire and the plaintiff paid over $3 million to cover the homeowners' loss.

At trial, following the close of the plaintiff's case-in-chief, FIS orally moved for judgment as a matter of law, which the district court held in abeyance until after the close of the defendant's evidence. Upon FIS's renewal of its oral motion for judgment as a matter of law, the court orally granted the motion, but only as to Kemper's breach of fiduciary duty claim. The jury returned a verdict in favor of the defendant as to the other two claims. Kemper appeals the district court's order granting FIS's motion for judgment as a matter of law on its claim of breach of fiduciary duty. We affirm.

2

## I. BACKGROUND

Kemper offers insurance products through agreements with independent insurance agencies including FIS. J.A. 330-34. FIS, an independent insurance agency, handles insurance issued by multiple insurance carriers, including Kemper. J.A. 373-74, 430-32. Kemper and FIS entered into a franchise agreement which permitted FIS to bind insurance coverage for houses costing less than $600,000 on Kemper's behalf, and FIS was designated a "franchise agency." J.A. 334-37. Houses costing more than $600,000 required approval from Kemper's underwriting department. J.A. 337-38. After it issued an insurance policy for a home, Kemper sent inspectors to the insured property if it was valued at more than $400,000. J.A. 374-75. Kemper generally sent these inspectors within thirty to sixty days of issuance of the insurance policy to determine the replacement cost of the insured home. J.A. 375-76, 441-43.

Sally and John Graham were long-time Kemper policyholders and customers of FIS. J.A. 407-08, 413-14. The Grahams built a new home and sought to obtain a Kemper insurance policy from FIS. J.A. 407-08. The stated replacement cost of the Grahams' 6400 square foot home was $800,000, which equaled the cost of the home's construction. J.A. 408-09, J.A. 444-45. John Curtis, an FIS agent, added, as buffer, an additional $50,000 coverage for a total policy amount of $850,000. J.A. 420-21,

3

445-46. Curtis submitted the Grahams' policy information to Kemper since the cost was above the $600,000 limit and, accordingly, required approval from Kemper's underwriters. J.A. 420-21. Curtis and FIS obtained approval for the $850,000 coverage. J.A. 343. Kemper issued the written homeowner's insurance policy with an effective date of February 15, 2003. J.A. 449. Curtis ate lunch with John Graham on February 26, 2003 and planned to deliver the homeowner's insurance policy to him and obtain his signature. J.A. 419-21. At lunch, Graham told Curtis that a Wachovia bank appraisal estimated the replacement cost of slightly less than $1.3 million. Id. Graham then gave Curtis a copy of the Wachovia appraisal. Id. Curtis did not give the Wachovia appraisal to Kemper. J.A. 421-25. Curtis made a notation in FIS's records that he felt Wachovia's appraisal was inaccurate and knew Kemper would conduct its own appraisal. J.A. 420, 444.

Kemper's inspector missed his initial appointment on March 6, 2003; however, the appointment was rescheduled and the appraisal was completed on March 26, 2003. J.A. 420, 451. The inspector estimated the replacement cost of the Grahams' home at about $1.6 million. Kemper received the report on Friday, April 11, 2003. Kemper did not make any adjustments to the Grahams' policy. On Thursday, April 17, 2003, a fire severely damaged the Grahams' house. J.A. 412. The Grahams received about $3

4

million from Kemper to cover their losses from the fire. J.A. 412-13.

Kemper filed suit against FIS under North Carolina law for breach of contract, breach of fiduciary duty, misrepresentation, and negligence. J.A. 14-20. The district court granted FIS's motion for summary judgment only on the breach of contract claim, thus, a jury trial ensued on three claims. J.A. 124-128. At trial, Kemper's underwriter contended that Kemper would have canceled the Grahams' homeowners' insurance policy had it known about the Wachovia appraisal, J.A. 345-46; that Kemper had never approved policies over $1 million, J.A. 389-90; and that Kemper would not have approved the Grahams' policy if it had known that the home was not within 1,000 feet of a fire hydrant, J.A. 127; 398-99. Trial evidence also included issuance of a Kemper policy for a home with a replacement cost of $1.4 million to another FIS customer from 2002 to 2003, J.A. 390-92; testimony that there was no rigid cut-off beyond which homes would not be insured, J.A. 479; testimony that Kemper never communicated a cut-off to FIS, J.A. 479; testimony that Kemper always sent its inspectors to evaluate high-value homes after policy issuance to determine replacement cost, J.A. 440-43; and testimony that Fire Protection Class 10 (and nothing lower) was the only category for homes that resulted in automatic, non-renewal of a homeowners' insurance policy at the end of a policy term such

5

that the Grahams' home in Class 9 would not have necessitated policy cancellation or non-renewal, J.A. 456-59.

The district court granted FIS's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, having found that FIS owed no fiduciary duty to Kemper. J.A. 715-16. Kemper timely appealed.

II. JUDGMENT AS A MATTER OF LAW

A. STANDARD OF REVIEW

A district court's ruling on a motion for judgment as a matter of law is renewed de novo. Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).

> If a reasonable jury could reach only one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture, judgment as a matter of law must be entered. If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied.

Id. (internal citations omitted); see Fed. R. Civ. P. 50. North Carolina law applies to this diversity action. See Breezewood of Wilmington Condos. Homeowners' Ass'n, Inc. v. Amerisure Mut. Ins. Co., 335 F. App'x 268, 270 (4th Cir. 2009).

6

B. ANALYSIS

Pursuant to North Carolina law, a fiduciary duty exists where:

> 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . ., [and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and influence on the other*.'

Dalton v. Camp, 353 N.C. 647, 651-52 (2001) (quoting Abbitt v. Gregory, 201 N.C. 577 (1931)) (emphasis in original) (additional internal citations omitted). North Carolina law generally provides that contracting parties "owe no special duty to one another beyond the terms of the contract. . ." Broussard v. Meineke Disc. Muffler Shops, 155 F.3d 331, 347-48 (4th Cir. 1998). "*Only* when one party figuratively holds all the cards -- all the financial power or technical information, for example -- have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen." Id. at 348 (internal citation omitted) (emphasis added). Generally, the existence of a fiduciary relationship is a question of fact for a jury. Tin Originals, Inc. v. Colonial Tin Works, Inc., 98 N.C. App. 663, 666 (1993).

In Tin Originals, the defendant's tin items constituted eighty percent of the plaintiff's sales and the defendant was

7

the plaintiff's only source of those items, but, ultimately, the defendant began to sell its items directly to the public and sought to take over the relevant market. Id. at 665-66. The defendant asserted that despite the special trust and confidence the plaintiff placed in the defendant, the defendant held no corresponding superiority or influence necessary to establish a fiduciary relationship. Id. The North Carolina Court of Appeals affirmed the trial court's grant of a directed verdict to the defendant, having found that the parties had mutually interdependent businesses; and, therefore, no fiduciary relationship existed. Id.

In Mikels v. Unique Tool & Mfg. Co., the district court denied the defendant's motion for summary judgment where the plaintiff, who sold the defendant manufacturing company's products as a representative, alleged that the defendant company failed to properly pay him commissions and fraudulently concealed information which it had a duty to disclose to him as a fiduciary. No. 5:06CV32, 2007 U.S. Dist. LEXIS 91814, at *29-36 (W.D.N.C. Dec. 3, 2007). The court found that the plaintiff's allegation that the defendant withheld the total amount of sales for which the plaintiff was responsible prevented the plaintiff from accurately keeping track of his commissions. See id. Thus, the court held that a genuine issue

8

of material fact existed since only the defendant had access to the aggregate sales.  Id.

Kemper argues that the franchise agreement is of paramount importance and establishes the fiduciary relationship between Kemper and FIS.  Kemper contends that it relied on FIS since Kemper generally has no contact with its insured, the agent is the sole source of information for Kemper, and, therefore, FIS bore a fiduciary duty to Kemper and should have relayed the Wachovia appraisal to Kemper.  Kemper states that it would have declined insurance for the Grahams' home if it knew the home's true value.  Kemper contends that it presented sufficient evidence for a jury to consider its breach of fiduciary duty claim and find in Kemper's favor.

FIS asserts that no authority exists to establish that a fiduciary relationship is created between an insurance carrier and an independent insurance agency where the independent insurance agency handles insurance issued by multiple carriers and acts an agent for the customers.  The defendant also contends that Kemper's claim of negligence, considered and rejected by the jury, was predicated on the same assertions Kemper makes in support of its fiduciary duty claim — that it would not have insured the Grahams' home if it had known that the replacement cost exceeded $1 million and that Kemper placed special trust in FIS as its "franchise agency" and only source

9

of information about the replacement cost. Further, FIS asserts that coverage had begun already at the time Curtis learned of the Wachovia appraisal. Thus, FIS states that Kemper was too late to reject the application for coverage solely based on the Wachovia appraisal and that FIS and its agent Curtis acted reasonably.

Contrary to Tin Originals and Mikels where one party exercised domination and control over another party, in the instant action, the evidence presented at trial established that FIS was not the sole means of Kemper's ability to calculate replacement cost value of the Grahams' home and FIS. The evidence presented at trial, the record, and relevant North Carolina case law demonstrate that no fiduciary relationship existed between Kemper and FIS; rather, they were mutually interdependent parties. See Tin Originals, 98 N.C. App. at 666. Routinely, Kemper did not rely upon FIS's determinations of replacement costs but always sent its own inspectors for high value homes. FIS learned of the Wachovia appraisal after the policy was issued and during the time period within which Kemper's inspection was to take place. Nothing in Kemper's designation of FIS as a "franchise agency" transformed the parties' relationship into that of a fiduciary, since Kemper continued to do its own inspections and continued to require approval for issuance of its insurance policies. That fire

10

destroyed the Grahams' home so soon after the issuance of the policy is unfortunate, but Kemper had opportunity to conduct its own inspection and had access to the replacement cost of the Grahams' home. Indeed, Kemper received the inspector's report prior to the fire. Therefore, the district court properly found that no genuine issue of material fact existed such that judgment as a matter of law was appropriate on Kemper's claim of breach of fiduciary duty.

## III. CONCLUSION

The judgment of the district court is

AFFIRMED.